## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Chapter 11 |
| Debtors. | Case No. 16-11626 (BLS) |
| | (Jointly Administered) |
| SC MESABI LITIGATION TRUSTEE, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 18-50555 (BLS) |
| CENTRAL BANK OF INDIA AND EXPORT IMPORT BANK OF INDIA, | |
| Defendants. | |

**OPENING BRIEF OF DEFENDANTS CENTRAL BANK OF INDIA AND EXPORT IMPORT BANK OF INDIA IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

Dated: November 5, 2018
    Wilmington, Delaware

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, Delaware 19801

**BAILEY DUQUETTE P.C.**
James D. Bailey (*pro hac vice*)
100 Broadway, 10th Floor
New York, NY 10005

*Counsel to Defendants Central Bank of India and Export Import Bank of India*

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Compay LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING........................................................................ 2

SUMMARY OF ARGUMENT ............................................................................................... 3

STATEMENT OF WELL-PLEADED ALLEGATIONS OF THE COMPLAINT AND
ADDITIONAL FACTS THAT THE COURT MAY CONSIDER ON THIS MOTION .............. 5

      The Parties ............................................................................................................. 6

      The History of the Project and the Security Interests in ESML's Collateral...................... 6

      The Allegations Against the SC Lenders........................................................................ 10

      The Contradictory Allegations in the Complaint............................................................ 12

      Term Loan Lenders' Breach of the Intercreditor Agreement ........................................... 13

ARGUMENT .................................................................................................................... 15

I.     The Trustee Fails to Plead the Necessary Elements of His Claims as a Result of
       Contradictory Allegations ....................................................................................... 17

II.    The Complaint Fails to State a Claim for Constructive Fraudulent Transfer .................. 20

     A.    The Trustee Has Not Alleged Any Facts in Support of His Legal Conclusion
           Regarding Insolvency .......................................................................................... 21

     B.    The Trustee Has Not Alleged Sufficient Facts to Support the Allegation
           That the Debtors Received Less Than Reasonably Equivalent Value.................. 23

     C.    The Complaint Demonstrates that the Loan Proceeds Provided by Defendants,
           Not EPIL's Contract Performance, Was the Value Exchanged for the
           Security Interests................................................................................................. 24

III.   The Complaint Fails to State a Claim for Actual Fraudulent Transfer............................ 26

IV.   The Trustee's Claim for Relief Under 11 U.S.C. § 502(d) is, at Best, Premature
      and Must Be Dismissed ........................................................................................... 30

V.    The Trustee Has Not and Cannot State a Claim for Equitable Subordination
      Under 11 U.S.C. § 510(c) ........................................................................................ 31

     A.    The Trustee's Contention that the SC Lenders Engaged in Inequitable
           Conduct is Entirely Unsubstantiated.................................................................. 32

B.     The Trustee Has Not Alleged Facts to Show Injury to the Creditors or Conferring of an Unfair Advantage on the SC Lenders ........................................................... 35

C.     Equitable Subordination, in this Case, Is Inconsistent with the Provisions of the Bankruptcy Code Because the SC Lenders' Claims Should Be Allowed in Full. 36

VI.    The Fifth Cause of Action in the Complaint Seeking Declaratory Relief Also Fails to State a Claim ..................................................................................................................... 36

CONCLUSION .................................................................................................................... 38

## TABLE OF AUTHORITIES

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994) ...................................................................................16

*Aphton Corp. v. Sonafi Pasteur (In re Aphton Corp.)*,
   423 B.R. 76 (Bankr. D. Del. 2010) ........................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................15

*Astropower Liquidating Trust v. Xantrex Tech. Inc. (In re Astropower Liquidating Trust)*,
   335 B.R. 309 (Bankr. D. Del. 2005) .......................................................................21

*Bank of N.Y. Mellon Trust co., N.A. v. Miller (In re Franklin Bank Corp.)*,
   526 B.R. 527 (D. Del. 2014). ..................................................................................35

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
   296 F.3d 164 (3d Cir. 2002) ...................................................................................26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................15

*Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*,
   587 B.R. 445 (Bankr. D. Del. 2018) .......................................................................30

*Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
   713 F.2d 618 (11th Cir. 1983) .........................................................................16, 25

*Boston Trading Grp., Inc. v. Burnazos*,
   835 F.2d 1504, 1509 (1st Cir. 1987) ......................................................................28

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................16

*Charys Liquidating Trust v. Hades Advisors, LLC (In re Charys Holding Co.)*,
   No. 08-10289 (BLS), 2010 Bankr. LEXIS 2072 (Bankr. D. Del. July 14, 2010) ....20

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
   323 F.3d 228 (3d Cir. 2003). ..................................................................................36

*Dixon v. Ruth (In re Gluth Bros. Constr., Inc.)*,
   424 B.R. 368 (Bankr. N.D. Ill. 2009) .....................................................................22

*Duke and King Mo., LLC v. Nath Cos. (In re Duke and King Acq. Corp.)*,
   508 B.R. 107 (Bankr. D. Minn. 2014) ...............................................................24, 26

*Early v. Bankers Life and Cas. Co.,*
 959 F.2d 75 (7th Cir. 1992) ................................................................................ 16

*Fowler v. UPMC Shadyside,*
 578 F.3d 203 (3d Cir. 2009) ........................................................................... 15, 16

*Friedberg v. Barefoot Architect, Inc.,*
 723 F. App'x 100 (3d Cir. 2018) .......................................................................... 26

*Gellert v. Coltec Indus., Inc. (In re Crucible Materials Corp.),*
 Adv. No. 11-53884, 2012 Bankr. LEXIS 5102 (Bankr. D. Del. Oct. 31, 2012) ................. 15, 20

*Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.),*
 327 B.R. 711 (Bankr. D. Del. 2005) ............................................................ 20, 22, 24

*Goldenberg v. Indel, Inc.,*
 741 F. Supp. 2d 618 (D.N.J. 2010) ....................................................................... 16

*Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.),*
 507 B.R. 452 (Bankr. S.D.N.Y. 2014) .................................................................... 21

*Henry v. Lehman Commercial Paper, Inc. (In re First All. Mortg. Co.),*
 471 F.3d 977 (9th Cir. 2006) .............................................................................. 28

*Hirsch v. Arthur Andersen & Co.,*
 72 F.3d 1085 (2d Cir. 1995) .............................................................................. 19

*In re AgFeed USA, LLC,*
 No. 13-11761 (BLS), 2015 Bankr. LEXIS 1403 (Bankr. D. Del. Mar. 11, 2015) .................. 30

*In re Augie/Restivo Baking Co., Ltd.,*
 87 B.R. 242 (E.D.N.Y. 1988) ............................................................................. 25

*In re Burlington Coat Factory Secs. Litig.,*
 114 F. 3d 1410 (3d Cir. 1997) .......................................................................... 6, 20

*In re Fundamental Long Term Care, Inc.,*
 873 F.3d 1325, 1342–43 (11th Cir. 2017) ............................................................... 19

*In re Lids Corp,*
 260 B.R. 680 (Bankr. D. Del. 2001) ................................................................. 30, 31

*In re Mid-Am. Waste Sys., Inc.,*
 284 B.R. 53 (Bankr. D. Del. 2002) ...................................................................... 32

*JCF AFFM Debt Holdings, L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins.
 Holdings, Inc.),*
 565 B.R. 566 (Bankr. D. Del. 2017) ..................................................................... 18

*Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide Ltd.),*
     139 F.3d 574 (7th Cir. 1998) ..................................................................................25

*Maloney v. Scottsdale Ins. Co.,*
     256 F. App'x 29 (9th Cir. 2007) ..............................................................................18

*Mellon Bank N.A. v. Metro Commc'ns, Inc.,*
     945 F.2d 635 (3d Cir. 1991) ....................................................................................25

*Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.),*
     92 F.3d 139 (3d Cir. 1996) ..................................................................................23, 24

*Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC),*
     426 B.R. 96 (Bankr. D. Del. 2010) ..........................................................................19

*Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs., Inc.),*
     362 B.R.149 (Bankr. D. Del. 2007) ..........................................................................27

*Miller v. Welke (In re United Tax Grp., LLC),*
     Adv. No. 16-50088 (LSS), 2016 Bankr. LEXIS 4322 (Bankr. D. Del. Dec. 13, 2016) ...........22

*Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.),* Adv. No. 10-50514 (KG), 2010 Bankr. LEXIS 2720 (Bankr. D. Del. Sept. 1, 2010)
     ..............................................................................................................32, 33, 34

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.),*
     No. 08-11006 (BLS), 2011 Bankr. LEXIS 3553 (Bankr. D. Del. Sept. 15, 2011) .......20, 31, 32

*Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.),*
     405 B.R. 527 (Bankr. D. Del. 2009) ....................................................................21, 28

*OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.),*
     325 B.R. 696 (Bankr. D. Del. 2005) ..............................................................21, 24, 26

*Oliver v. SD-3C LLC,*
     No. 11-cv-01260-JSW, 2016 U.S. Dist. LEXIS 146427 (N.D. Cal. Sept. 30, 2016) ...............19

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
     38 F.3d 1380 (3d Cir. 1994). ..................................................................................16

*Pardo v. Gonzaba (In re APF Co.),*
     308 B.R. 183 (Bankr. D. Del. 2004) ..........................................................................21

*Peltz v. Hatten,*
     279 B.R. 710 (D. Del. 2002) ..............................................................................21, 24

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ............................................................................6, 16

*Pension Transfer Corp. v. Hollrah (In re Fruehauf Trailer Corp.)*,
   444 F.3d 203 (3d Cir. 2006) ...................................................................................23

*PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*,
   128 F. App'x 839 (3d Cir. 2005) ...........................................................................27

Pioneer Liquidating Corp. v. San Diego Trust & Sav. Bank (In re Consol. Pioneer Mortg.
   Entities),
   211 B.R. 704 (S.D. Cal. 1997) ...............................................................................28

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Secs. Litig.)*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................................................18

*Rudeen v. Allstate Ins. Co.*,
   No. 3:16-CV-1827 (MPS), 2018 U.S. Dist. LEXIS 45252 (D. Conn. Mar. 20, 2018) .............37

*SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian)*,
   573 F. App'x 154 (3d Cir. Aug. 11, 2014); ...........................................................26

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
   403 F.3d 43 (2d Cir. 2004) .....................................................................................28

*Shaw Digital Equip. Corp.*,
   83 F.3d 1194 (1st Cir. 1996) ....................................................................................6

*Shubert v. Lucent Techs. Inc. (In re Winstar Comm'ns., Inc.)*,
   554 F.3d 382 (3d Cir. 2009). .....................................................................31, 32, 35

*United States v. State St. Bank & Trust Co.*,
   520 B.R. 29 (Bankr. D. Del. 2014)..........................................................................31

*Villareal v. R.J. Reynolds Tobacco Co.*,
   839 F.3d 958 (11th Cir. 2016), cert. denied, __ U.S. __, 137 S. Ct. 2292 (2017)..............16, 24

*Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*,
   527 B.R. 169 (D. Del. 2015). ...........................................................................33, 34

*Zazzali v. Hirschler Fleischer, P.C.*,
   482 B.R. 495 (D. Del. 2012) ...................................................................................22

**Statutes**

11 U.S.C. § 101 ............................................................................................................2

11 U.S.C. § 502(d)......................................................................................................30

11 U.S.C. § 547 ...................................................................................................................21

11 U.S.C. § 548 .....................................................................................................................1

Minn. Stat. §513.44 .......................................................................................................20, 26

**Rules**

Fed. R. Civ. P. 8(d)(2) .......................................................................................................18

Federal Rule 12(b)(6) ......................................................................................................1, 3

Local Rule 7007-1. ..............................................................................................................3

Defendants Central Bank of India ("CBI") and Export Import Bank of India ("EIBI" and, together with CBI, the "SC Lenders" or "Defendants") submit this opening brief in support of their motion to dismiss (the "Motion") the *Complaint to Avoid Fraudulent Transfers Pursuant to 11 U.S.C. § 548 and 550; Object to Claim Nos. 144 and 154; and Avoid All Liens related to Such Transfers and Claims against Defendants* (the "Complaint" or "Compl.") of Bradley E. Scher, the SC Mesabi Litigation Trustee (the "Trustee") as successor-in-interest to Essar Steel Minnesota LLC ("ESML") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Federal Rule 12(b)(6)").[2]  In support of the Motion, Defendants respectfully state as follows:

## PRELIMINARY STATEMENT

The Trustee's Complaint is an effort to perpetuate the fraud initiated by ESML while building – or purporting to build – a large iron ore mine and pellet plant in Minnesota (the "Project").  The Project was, in the words of the Trustee, an "illegal shell game" which "left nearly $2 billion in unpaid claims,"[3] including approximately $150 million owed to the Defendants.  ESML was an active participant in this fraudulent scheme.  Indeed, the Project was a "billion dollar scam perpetrated by the directors and officers of ESML . . . to siphon off ESML construction project funds in blatant acts of self-dealing."[4]

---

[2] Federal Rule 12(b)(6) is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012.

[3] *See Opposition to Essar Global Fund Limited, Essar Project Management Company Limited, and Essar Constructions Limited's Partial Motion to Dismiss, Essar Steel Minnesota LLC, v. Essar Global Fund Limited et al.*, Adv. Proc. No. 17-50001 (BLS) (the "Essar Affiliates Adversary Proceeding"), D.I. 82, at 2.

[4] *See Second Amended Complaint*, Essar Affiliates Adversary Proceeding *(Nystrom v. Vuppuluri et al)*, Adv. Proc. No. 17-50001-BLS, D.I. 61, ¶ 1.  As discussed further *infra*, the Trustee incorporates into his Complaint against the SC Lenders the First Amended Complaint ("FAC") in the Essar Affiliates Adversary Proceeding.  Compl. ¶ 42.  The FAC was later bifurcated into two second amended complaints: one brought by the Trustee against the Essar Affiliates, and one brought by the Litigation Trustee for the UC Litigation Trust against ESML's former officers and directors (the "Individual Complaint").

The Trustee's outrage at the conduct of ESML and its directors and officers is justified. His Complaint against the SC Lenders is not. Despite detailing the harm caused by ESML and its affiliates, the Trustee asks this Court to recognize a claim founded in ESML's own conduct, and to recover on account of that conduct from one of the primary victims of ESML's scam, the SC Lenders.

The Complaint is contradictory, offensive and lacks any merit. But this is not mere editorializing. The Complaint's contradictions have practical consequences: they vitiate necessary elements of the causes of action such that the Trustee has failed to state any claims. The Complaint must be dismissed accordingly.

## NATURE AND STAGE OF THE PROCEEDING

On July 8, 2016 (the "Petition Date"), ESML and its direct parent company, ESML Holdings Inc. ("Holdings") (together, the "Debtors"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended or modified, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On September 30, 2016, the SC Lenders filed proof of claim no. 144 in the amount of $150,416,096 as a secured claim against Holdings and proof of claim no. 154 in the amount of $150,416,096 as a secured claim against ESML.

On June 13, 2017, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.*, No. 16-11626 (BLS), [D.I. 1025] (the "Confirmation Order"). The Confirmation Order confirmed the *Third Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.*, No. 16-11626 (BLS), [D.I. 990] (the "Plan"). The effective date of the Plan was December 22, 2018 (the "Effective Date"). The Plan provided for *pari passu* treatment in a

single creditor class of all the prepetition secured lenders' claims, including those of the SC Lenders. *See id.*

On the Effective Date, the Debtors, Mesabi Metallics Company LLC (the reorganized company) and Bradley E. Scher, as Trustee, executed the SC Litigation Trust Agreement (the "Trust Agreement") establishing the SC Mesabi Litigation Trust (the "Trust") and appointing Mr. Scher as Trustee.

On June 20, 2018, the Trustee filed his Complaint against the SC Lenders.

Counsel for the SC Lenders agreed to accept service on the SC Lenders' behalf on July 20, 2018.

The SC Lenders now file this opening brief in support of their Motion for an order dismissing the Complaint, with prejudice, for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6). This opening brief is filed contemporaneously with the Motion pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware 7007-1.

## SUMMARY OF ARGUMENT[5]

1.    By this Motion, the SC Lenders seek entry of an order dismissing the Complaint because it fails to state a claim upon which relief can be granted. For the following reasons, the Court should dismiss the Complaint.

2.    The Trustee's contradictory allegations in the Complaint vitiate each of the Trustee's claims for relief. The Trustee predicates his claims against the Defendants on the theory that the Defendants lent to an affiliate of ESML, EPIL, received their security interests in ESML's collateral

---

[5] Capitalized terms not otherwise defined in this Summary of Argument section shall have the same meanings ascribed in subsequent sections of this opening brief.

as an assignee of EPIL, and that the grant of those interests is avoidable due to the breach by EPIL of its reciprocal contract obligations to ESML. To support this theory, the Trustee, at times, portrays ESML as having had a bona fide expectation of contract performance by EPIL. The Trustee also alleges, however, that EPIL and ESML were part of a "single business enterprise" – that they were one and the same – and that EPIL's purported "breach" was part of a scam orchestrated, in part, by ESML itself. The Trustee cannot have it both ways. If ESML and EPIL are a single business enterprise, then the SC Lenders' liens were directly granted by this single business enterprise (meaning the money lent to the enterprise, not EPIL's performance, is consideration for the lien); if ESML orchestrated the fraud, then EPIL's "breach" is a fiction, and the SC Lenders' liens should not be voided by EPIL's non-performance. In continuing to foist ESML's construct on the SC Lenders by way of this Complaint, the Trustee perpetuates ESML's fraud.

3.      Furthermore, the Trustee has failed to state a claim for constructive fraud for at least three reasons. First, the Complaint contains no facts supporting the conclusory allegation that the Debtors were insolvent *at the time* of the challenged transfers. Second, the Complaint contains no facts supporting the conclusory allegation that the Debtors did not receive reasonably equivalent value *at the time* of the challenged transfers. To the contrary, the Complaint admits it is improperly assessing value in hindsight. Finally, the Complaint mischaracterizes the consideration supporting the challenged transfers. Defendants' agreement to lend (and actual loans), not the allegedly defective contract performance of the Debtors' affiliate, supported the transfers.

4.      The Trustee's actual fraudulent transfer claim must also fail because the Complaint does not contain *any* facts – much less the detailed facts required by Rule 9(b) – sufficient to support an inference that the Debtors acted with intent to defraud creditors. Indeed, the Complaint freely admits the *nonfraudulent* motives underlying the challenged transfers.

5.      Further, the Trustee's count for disallowance of the SC Lenders' claims pursuant to section 502(d) of the Bankruptcy Code must fail because it is based entirely on the Complaint's allegations that the SC Lenders' security interests are avoidable as fraudulent transfers. The Trustee, however, has not obtained a judicial determination on the fraudulent transfer contentions, which is a prerequisite to survive summary dismissal. Thus, the claim for disallowance or reduction of the SC Lenders' claims must be dismissed.

6.      Finally, the Trustee has not stated and cannot state a claim for equitable subordination because the Trustee fails to plead any facts in support of (much less required to satisfy) the three-part test adopted in this Circuit. First, the Trustee has not pleaded a single fact that would tend to show that the SC Lenders behaved inequitably. To the contrary, the Trustee's allegations demonstrate that the SC Lenders participated in a typical, non-insider, lender-borrower relationship with respect to the Debtors, which is not inequitable as a matter of law. Second, because the Trustee has not pleaded that the SC Lenders engaged in inequitable conduct, the Trustee cannot establish that any creditor was harmed or that the SC Lenders received an unfair advantage by obtaining security interests in ESML's collateral. Third, in this case, equitable subordination is incompatible with other Bankruptcy Code provisions and would frustrate the doctrine's purpose because subordinating the SC Lenders' claims only would serve to penalize the SC Lenders.

## STATEMENT OF WELL-PLEADED ALLEGATIONS OF THE COMPLAINT AND ADDITIONAL FACTS THAT THE COURT MAY CONSIDER ON THIS MOTION

Set forth below are the well-pleaded, non-conclusory allegations in the Complaint. These include allegations from the FAC, which the Trustee fully incorporates by reference into the Complaint. *See* Compl. ¶ 42. Also referenced herein, where necessary, are those documents integral

to or explicitly relied upon in the Complaint as well as other pleadings in the Essar Affiliates

Adversary Proceeding and in related proceedings of which the Court can take judicial notice. [6]

**The Parties**

ESML is a limited liability company organized under the laws of the State of Minnesota.

It is a wholly-owned subsidiary of Holdings. *Id.* at ¶ 12. ESML and Holdings are the Debtors

in this ongoing bankruptcy case. Essar Projects India Limited ("EPIL") is an affiliate of ESML

and is the entity within the Essar Group to whom the SC Lenders provided a loan. *See id.* at ¶¶

1, 14, 23; *see* FAC ¶¶ 17, 19, 21. According to the Complaint, ESML and EPIL both are

ultimately held by Essar Global Fund Limited ("Essar Global") and form a "single business

enterprise." FAC ¶¶ 2, 5.

The SC Lenders are comprised of CBI and EIBI, both banks organized under the laws of

India. Compl. ¶¶ 13, 14. The SC Lenders are beneficiaries of the "Trust formed pursuant to the

Plan. As authorized by the Plan, the SC Lenders have designated a member of the SC Mesabi

Litigation Trust Advisory Board.

Plaintiff in this action is Bradley E. Scher, in his capacity as theTrustee of the Trust. The

Trustee is the successor-in-interest to ESML. *Id.* at ¶¶ 11, 40.

**The History of the Project and the Security Interests in ESML's Collateral**

ESML undertook to build the Project, a large-capacity, state-of-the-art iron ore mine and

pellet plant, in Nashwauk, Minnesota. *Id.* at ¶ 1. In fact, the Project was, in the words of the

---

[6] *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered "without converting the motion [to dismiss] into one for summary judgment.") (internal citations omitted) (quoting *Shaw Digital Equip. Corp.*, 83 F.3d 1194, 1220 (1st Cir. 1996)); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Trustee, an "illegal shell game" which "left nearly $2 billion in unpaid claims,"[7] including approximately $150 million owed to the Defendants. *Id.* at ¶ 26. The Trustee alleges that ESML was an active participant in this fraudulent scheme. FAC ¶¶ 6, 110, 124. In fact, the Project was a "billion dollar scam perpetrated by the directors and officers of ESML . . . to siphon off ESML construction project funds in blatant acts of self-dealing."[8] Nevertheless, Plaintiff (as successor-in-interest to ESML) now seeks to recover by this action from one of the primary victims of ESML's scam, the SC Lenders.

ESML and its affiliates conceived the Project in 2008. Compl. ¶ 18. In 2010, at the direction of its parent entity, Essar Global, ESML restructured its Project contracts. *Id.* at ¶¶ 20-21. To this end, ESML entered into a contract with its affiliate, EPIL, dated May 5, 2010, for the procurement of offshore goods and the supply of engineering services for $215 million (the "Supply and Engineering Contract"). *Id.* at ¶ 21. The purpose of this restructuring was to "minimize U.S. tax liability" and "to take advantage of additional lending secured through EPIL." *Id.* at ¶ 22 (emphasis added). That "additional lending" to the Project was provided by the Defendants, the SC Lenders, as discussed below. *Id.* at ¶ 23.

Obtaining sufficient financing was critical to the Project's success. Compl. ¶ 3. Thus, in 2010, ESML entered into a credit agreement with a group of Indian banks (the "Project Finance Lenders") which provided for ESML to borrow $530 million. FAC ¶¶ 82-83. In addition, in or around August 2010, a different set of Indian banks – the SC Lenders – agreed to fund the Project by making loans in the amount of Rs. 600 crore to EPIL (the "Letters of Sanction"). Compl. ¶ 23. The SC Lenders' financing was contingent on ESML providing security for the loan to EPIL in the form

---

[7] *See Opposition to Essar Global Fund Limited, Essar Project Management Company Limited, and Essar Constructions Limited's Partial Motion to Dismiss*, Essar Affiliates Adversary Proceeding, D.I. 82, at 2.

[8] *See* Individual Complaint ¶ 1.

of a mortgage on ESML's property and the pledge of ESML's shares, in addition to an assignment of EPIL's contractual rights. *See* Declaration of James D. Bailey, dated November 5, 2018 (the "Bailey Decl."), Ex. A. This security interest in ESML's property was to be *pari passu* with the Project Finance Lenders. *Id.*

This security obligation in favor of the SC Lenders was not only memorialized in the Letters of Sanction, but it was also memorialized in the Project Finance Lenders' credit agreement, which, unlike the SC Lenders' loan, was entered into directly with ESML (the "2010 Credit Agreement").[9] In furtherance of this security interest, ESML entered into a security agreement dated December 29, 2010, granting a security interest in its collateral to, *inter alia*, the "lenders in respect of the Supplier Financing." *See* Compl. ¶ 25(a); *see also* Bailey Decl., Ex B, at 4.

The SC Lenders agreed to increase their loan to EPIL to Rs. 900 crore pursuant to a facility agreement dated June 1, 2012 (the "Facility Agreement"). Compl. ¶ 23. EPIL's borrowings under the Facility Agreement were to be secured by, "an assignment by EPIL to the SC Lenders of all contracts, rights, securities and insurances with respect to ESML." *Id.* In addition, as set forth in section 3.2.1 of the Facility Agreement, the SC Lenders' loans were to be secured by, (i) an assignment of the Project Finance Lenders' and EPIL's mortgage over ESML's property; and (ii) an assignment of a pledge of 51% of shares of ESML created in favor of the Project Finance Lenders

---

[9] Specifically, the 2010 Credit Agreement between the Project Finance Lenders and ESML requires ESML to create "for the ratable benefit of the Secured Parties a valid and enforceable security interest in the Collateral . . . owned by [ESML]." *See* Bailey Decl., Ex. C. The 2010 Credit Agreement defines "Secured Parties" to include "each of the Upstream Supplier Financing Creditors (sharing *pari passu* in respect of the security interests of the Lenders in the Collateral, directly or through EPIL under the Supplier Financing)." *Id.* The "Upstream Supplier Financing Creditors" are further defined in that agreement as "the providers of supplier financing to EPIL, namely, the Export-Import Bank of India and the Central Bank of India." *See* FAC ¶ 83; *see also* Bailey Decl., Ex B, at 33. In other words, the SC Lenders – not just EPIL – are identified by name in the Project Finance Lenders' 2010 credit agreement as having a shared security interest in ESML's collateral.

and EPIL. *See* Bailey Decl., Ex. D, at 25. EPIL executed an Assignment Deed on June 1, 2012, assigning its rights as against ESML to the SC Lenders.[10] Compl. ¶ 24.

On June 14, 2012, ESML provided an acknowledgement of the assignment to CBI, as facility agent for the SC Lenders, stating that ESML consented to the terms of the assignment. *See* Bailey Decl., Ex. E. In addition to consenting to the assignment, ESML acknowledged that it would not, without the prior written consent of the SC Lenders, "incur, assume or raise any further secured debt for the Project and create any Security Interest therefor ranking *pari passu* with the Project Lenders on the Assigned Contract . . . during the currency of the Facilities." *Id.* ESML repeated this promise to the SC Lenders in an "Undertaking" dated the same day, which was entered into "in consideration of the [SC Lenders] granting the Facilities to [EPIL] to enable [EPIL] to comply with the terms of the [Supply and Engineering] Contract." *Id.* at Ex. F.

On March 3, 2014, ESML and EPIL entered into a letter agreement amending the Supply and Engineering Contract between the two parties (the "2014 Letter Agreement"). *Id.* at Ex. G. On the same day, (i) ESML created a mortgage on its property in Minnesota in favor of EPIL in the amount of $182.75 million (Compl. ¶ 25 (c)); (ii) EPIL assigned its rights in the 2014 Letter Agreement to the SC Lenders; (Bailey Decl., Ex. H); and (iii) EPIL assigned that mortgage to the SC Lenders, consistent with its obligations under the Letters of Sanction and the Facility Agreement. *Id.*

ESML needed additional financing for its Project in 2014. FAC ¶ 93. ESML thus entered into a Credit and Security Agreement on September 30, 2014 with a consortium of lenders (the "Term Loan Lenders") led by U.S Bank, N.A., as agent ("U.S. Bank"), pursuant to which the Term Loan Lenders committed $450 million to ESML. *Id.* at ¶¶ 93-94. In light of the introduction of a third set of secured lenders, ESML entered into an amended and restated security agreement dated

---

[10] Notably, ESML itself already had documented the SC Lenders' security interest in its collateral in the 2010 Credit Agreement and the 2010 Security Agreement.

September 30, 2014, pursuant to which ESML granted liens on, and a security interest in, substantially all of its assets to secure amounts owed to its secured creditors. Compl. ¶ 25(d). These secured creditors included the SC Lenders. *See* Bailey Decl., Ex. I. Indeed, the Trustee himself admits that ESML "secured" the financing from the SC Lenders: "To fund the Project, ESML entered into financing agreements and loan commitments totaling $980 million [the $530 million from the Project Finance Lenders and the $450 million from the Term Loan Lenders] from Indian and U.S. lenders, [and] secured an additional commitment for approximately $180 million of Project financing [from the SC Lenders]." FAC ¶ 80.

Also on September 30, 2014, ESML entered into an Intercreditor Agreement with its three sets of secured lenders (the "Intercreditor Agreement"). Bailey Decl., Ex. J. The Intercreditor Agreement describes ESML's secured obligations to each of the three sets of secured lenders (the SC Lenders, the Project Finance Lenders, and the Term Loan Lenders) and provides, among other things, that each of the three sets of secured lenders shall, if necessary, recover from ESML's collateral on a *pari passu* basis. *Id.*

### The Allegations Against the SC Lenders

Despite the fact that the SC Lenders have loaned over $150 million to the Project, and despite the Trustee's acknowledgement and admission of the funding and its security, the Trustee (as successor-in-interest to ESML) now objects to the SC Lenders' claims in bankruptcy and seeks to avoid the transfer of any liens or money to the SC Lenders. Notably, the Trustee has not objected to or challenged the claims or liens of any of the other secured creditors that provided financing to the Project.

The Trustee's claims against the SC Lenders are not predicated on any alleged (much less actual) wrongdoing of the SC Lenders but are instead based upon the alleged breach of the Supply

and Engineering Agreement by EPIL. Compl. ¶¶ 3-4. The Complaint alleges that "EPIL committed numerous serious and substantial breaches of its contract with ESML," (*Id.* at ¶ 3) and that "[a]s an assignee, the SC Lenders' Claims are subject to all of the defenses the Debtors could assert against the assignor." *Id.* at ¶ 4. Nowhere does the Complaint allege that the SC Lenders failed to loan money to the Project as agreed under the Letters of Sanction or Facility Agreement. According to the Trustee, "[i]n view of the fact that the rights of the SC Lenders are derivative of, and limited to, EPIL's rights against the Debtors, the SC Lenders' liens are subject to avoidance and the SC Lenders' claims are without merit." *Id.* Nowhere does the Complaint allege that there was any defect in the security provided to the SC Lenders in exchange for and in connection with their agreement to provide financing.

Instead, the Trustee alleges in entirely conclusory fashion that any transfers (of liens or security interests) to the SC Lenders were made by ESML "when the Debtors were insolvent and for less than reasonably equivalent value." *Id.* at ¶ 5; *see also id.* at ¶¶ 26, 48, 49, 60, 61, 75, 76, 87, 88. With respect to its intentional fraud claims, the sole conclusory allegation is that that avoidable transfers were "made with the actual intent to hinder, delay, or defraud present and future creditors," though it does not specify whom harbored such a fraudulent intent. *Id.* at ¶¶ 64, 91.

In similar conclusory fashion, the Complaint alleges that the SC Lenders "have engaged in inequitable conduct . . . which has resulted in injury to the creditors or conferring of an unfair advantage on the Defendants" that "has resulted in harm to the Plaintiff and its entire creditor body in that creditors have been misled as to the true financial condition of Plaintiff, have been induced to extend credit and/or provide services without knowledge of the actual facts regarding Plaintiffs' [sic] financial condition, and are less likely to recover the full amounts due to them because of Defendants' conduct." *Id.* at ¶ 111. The Complaint does not, however, allege any factual basis for

Defendants' "misconduct" or misleading of creditors.  To the contrary, the Complaint alleges only that Defendants "failed to account for" what is alleged to have been a "significant (negative) shift in the exchange rate of the Indian rupee (Rs.) vis-à-vis the United States Dollar" and that the Defendants "knew or should have known that there was a financing shortfall" and "made no effort to remedy" it.  *Id.* at ¶ 112.

### The Contradictory Allegations in the Complaint

The Complaint – especially because it has incorporated by reference the allegations of the FAC in the Essar Affiliates Adversary Proceeding – is rife with contradictions.  For example, while the Trustee asserts in the Complaint that the "SC Lenders never advanced funds or a loan to either Debtor," (*Id.* at ¶ 4), he also alleges (in the FAC) that ESML was part of a "single enterprise" with Essar Global and its affiliates.  FAC ¶ 5.  In other words, EPIL and ESML were, according to the Trustee, one and the same.  Indeed, the FAC alleges that "Essar Global controlled and dominated all aspects of Plaintiff, causing Plaintiff to have no separate existence and to act merely as an instrumentality and alter ego of Essar Global."  *Id.* at ¶ 369.[11]

ESML was not a passive participant in this scheme.  The pleadings in the Essar Affiliates Adversary Proceeding allege in detail how ESML, through its officers and directors, facilitated this fraud on its creditors.  *See id.* at ¶¶ 6, 110, 124.  For example, in 2015, ESML's CEO "caused ESML to pay [EPIL] $17 million so that Essar Global could make a $16 million equity contribution to ESML thereafter."  *Id.* at ¶ 124.  The ESML officers "also participated in an invoicing scheme with Essar Projects-US, in which ESML knowingly paid invoices for work that was never performed and for which ESML had received no reciprocal value."  *Id.* at ¶ 110.  The entire Project was "a billion

---

[11] *See also* FAC ¶ 2 ("ESML was treated as if it existed solely for the benefit of the Essar Global enterprise, without regard for ESML's interests or its creditors."); *id.* at ¶ 135 ("ESML was used as a pawn to provide liquidity to Essar Global (or affiliates).").

dollar scam <u>perpetrated by the directors and officers of ESML</u> . . . to siphon off ESML construction project funds in blatant acts of self-dealing."[12]

### Term Loan Lenders' Breach of the Intercreditor Agreement

On December 22, 2017, an hour before the Debtors filed their notice of the Effective Date, which would (among other things) permit distributions to be made to the secured lenders under the Plan, U.S. Bank, as agent for the Term Loan Lenders, filed an objection to the SC Lenders' claim (the "Claim Objection"), asserting nearly identical arguments to those put forward by the Trustee here. Compl. ¶ 43.

By filing the Claim Objection, the Term Loan Lenders' breached the Intercreditor Agreement among ESML's secured lenders. In light of the Intercreditor Agreement's New York forum selection clause, the SC Lenders sued the Term Loan Lenders for breach of the Intercreditor Agreement in the United States District Court for the Southern District of New York. *See Central Bank of India et al. v. U.S. Bank N.A.*, No. 1:18-cv-00534 (KBF) (SDNY) (the "New York Action"). On April 30, 2018, the SC Lenders moved for partial summary judgment against the Term Loan Lenders in the New York Action, seeking a declaratory judgment that the Term Loan Lenders were in breach of the Intercreditor Agreement. *See* New York Action, [D.I.19-22].

In their opposition to the SC Lenders' motion for summary judgment, the Term Loan Lenders argued that any "putative" breach of the Intercreditor Agreement is moot because the Trustee was "in the process of filing a substantially similar objection before the Bankruptcy Court consistent with [his] charge as SC Litigation Trustee." *See Opposition of U.S. Bank National Association, in its Capacity as Term Loan Agent, to Plaintiff's Motion for Partial Summary*

---

[12] Individual Complaint, ¶ 1. *See* footnote 4, *supra*. According to the UC Litigation Trustee, "[u]sing a byzantine maze of corporate structures to obfuscate their malfeasance . . . , [the former CEO and CFO of ESML] and their cohorts bled ESML dry, causing [ESML] and its creditors billions of dollars in damages." *Id.* Of course, in the instant Complaint, the Trustee attempts to sweep the role of ESML's officers under the rug by barely alluding to them.

*Judgment*, New York Action [D.I.23]. At that time, however, the Trustee had not yet filed the above-captioned adversary proceeding so the Term Loan Lenders' "putative" breach was only prospectively moot (to the extent it is moot at all).

In lieu of actually having filed a case against the SC Lenders, and despite the fact that the SC Lenders also are beneficiaries of the Trust, the Trustee provided U.S. Bank with a declaration in support of the Term Loan Lenders' opposition to the SC Lenders' summary judgment motion. *See* Declaration of Bradley E. Scher, Trustee of the SC Mesabi Litigation Trust, In Connection with the Opposition of U.S. Bank National Association, in its Capacity as Term Loan Agent to the Plaintiffs' Motion for Summary Judgment, dated May 30, 2018, New York Action, [D.I.26].[13] Lo and behold, the Trustee filed the instant action objecting to the SC Lenders' claims several weeks later, on June 20, 2018.

In addition to his objection seeking disallowance or reduction of the SC Lenders' claims (the Sixth Cause of Action), the Trustee also has asserted two claims for constructive fraudulent transfer (the First and Third Causes of Action), two claims for intentional fraudulent transfer (the Second and Fourth Causes of Action), a claim seeking declaratory judgment on the validity of the SC Lenders' liens (the Fifth Cause of Action), and a claim for equitable subordination (the Seventh Cause of Action). The recovery sought by the Trustee against the SC Lenders is in addition to the recovery the Trustee is seeking from the Essar Affiliates and the former CEO and CFO of ESML in the Essar Affiliates Adversary Proceeding. According to the allegations in the respective complaints, one group of defendants is the mastermind and perpetrators of a billion-dollar fraud; the other is a set of lenders out $150 million, and not accused of any wrongdoing. The Term Loan Lenders, which, through their agent U.S. Bank, blocked distributions to the SC Lenders under the Plan by filing their

---

[13] The motion is fully submitted and the parties are waiting on a decision from the Court on the motion for summary judgment.

eleventh-hour Claim Objection in violation of the Intercreditor Agreement, stand to gain from the causes of action asserted by the Trustee in the Complaint.

## ARGUMENT

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must allege well-pleaded facts with sufficient detail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A complaint offering only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555. The Supreme Court has clarified that "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The Third Circuit has adopted a two-part analysis courts must employ when deciding a motion to dismiss for failure to state a claim. "First, the factual and legal elements of a claim should be separated" with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Fowler*, 578 F.3d at 210-11. Next, the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.*; *Gellert v. Coltec Indus., Inc. (In re Crucible Materials Corp.)*, Adv. No. 11-53884, 2012 Bankr. LEXIS 5102, at *9 (Bankr. D. Del. Oct. 31, 2012). Accordingly, a complaint must do more than simply state that the plaintiff is entitled to relief; it must show such an entitlement with its facts. *Id.* "As the Supreme Court instructed in *Iqbal*, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –

but it has not 'shown' – that the pleader is entitled to relief.'" *Fowler*, 578 F.3d at 211 (internal citations omitted).

In deciding a 12(b)(6) motion, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."' *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Pension Benefit*, 998 F.2d at 1196 (court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document). A court may also rely on matters of public record, including the court's own docket. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

When a complaint relies, directly or indirectly, upon public documents or documents referenced in the Complaint and there is no dispute as to their authenticity, the documents will control over contradictory allegations in the complaint. *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").

A complaint can fail for what it admits as well as for what it omits. Thus, a "plaintiff . . . can plead himself out of court." *Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016), *cert. denied*, __ U.S. __, 137 S. Ct. 2292 (2017). If a plaintiff alleges facts that show he has no claim, "he's out of luck." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). Furthermore, a "party is bound by the admissions in his pleadings." *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

I.    **The Trustee Fails to Plead the Necessary Elements of His Claims as a Result of Contradictory Allegations**

The Trustee pleads contradictory allegations against Defendants and thereby fails to state a claim.

The Trustee does not allege any wrongdoing against the SC Lenders.  Nowhere does the Complaint allege that the SC Lenders failed to agree to lend money, or actually failed to lend money, to the Project.  Any purported infirmity in their liens against the Debtors is a result of the fact that the SC Lenders were "assigned" those liens by EPIL, and therefore step into the shoes of (the flawed creditor) EPIL.  According to the Trustee, because EPIL "breached" its obligations to its affiliate, ESML, the grant of those liens is voidable.  At the same time, the Trustee alleges that ESML was part of a "single business enterprise" with its affiliates (including EPIL).  FAC ¶ 5.[14]  If the Essar companies were indeed a single business enterprise, as the Trustee alleges, then: (1) the "enterprise" (and not EPIL as assignor) granted the liens to the SC Lenders, so the SC Lenders were not an "assignee" of the liens and (2) any purported "breach" by EPIL is a fiction because the "enterprise" had contracted with itself, and authorized the breach.

In fact, the Trustee (through its incorporation of the facts from the Essar Affiliate Adversary Proceeding) goes a step further, alleging that the whole Project was a fraud ("an illegal shell game"), and that ESML – through its officers and directors – was an integral part.  When it comes to the SC Lenders, however, the Trustee wants to maintain the fiction that ESML and EPIL were separate entities, that ESML had a legitimate expectation of EPIL's performance of its obligations under its contract with ESML, that ESML was injured as a result of such "breach" and has defenses against

---

[14] *See also* FAC ¶ 369. ("Essar Global controlled and dominated all aspects of Plaintiff, causing Plaintiff to have no separate existence and to act merely as an instrumentality and alter ego of Essar Global.").

EPIL's (innocent) assignors, the SC Lenders. In reality, continuing to pursue this objection against the SC Lenders just furthers ESML's fraud.

As Chief Judge Sontchi recently acknowledged, "[a]lthough the Federal Rules of Civil Procedure allows a party to plead inconsistent allegations in the alternative, *see* Fed. R. Civ. P. 8(d)(2), contradictory allegations sometimes are a reason to support dismissal." *JCF AFFM Debt Holdings, L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins. Holdings, Inc.)*, 565 B.R. 566, 586 n.95 (Bankr. D. Del. 2017) (citing *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 32 (9th Cir. 2007)). Here, the Trustee's allegations are not pleaded in the alternative. The primary source of the Trustee's contradictory allegations is the Essar Affiliates Adversary Proceeding. The Trustee incorporates by reference in the Complaint the allegations from the FAC. Compl. ¶ 42. He then repeats and realleges in the Complaint each and every allegation (including those from the FAC) when setting forth each and every cause of action. *See id.* at ¶¶ 44, 56, 70, 83, 97, 101, 110. The Complaint's contradictory allegations, therefore, far from being pleaded in the alternative, are part and parcel of each cause of action. *See Rieger v. Drabinsky (In re Livent, Inc. Noteholders Secs. Litig.)*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (plaintiffs do not have "license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent, unitary claim . . . Internally conflicting factual assertions that constitute integral components of a claim must be distinguished from a permissible alternative statement embodying a theory of a whole sufficient claim.").

The Complaint's contradictions, therefore, have practical consequences. For example, its four fraudulent transfer causes of action require, among other things, a credible allegation that the SC Lenders failed to provide "reasonably equivalent" value in exchange for their liens. But if, as also alleged, the SC Lenders were lending to the "single business enterprise," the value provided by

the SC Lenders is their loans, not the performance by EPIL. And it is not disputed that the SC Lenders agreed to provide financing, and did in fact provide financing, to the "enterprise" in exchange for their liens. At a minimum, the four fraudulent transfer causes of action should be dismissed as a result of these contradictory allegations. *See Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 104 (Bankr. D. Del. 2010) (dismissing fraudulent transfer claim for failure to "plead sufficient facts" and "credible allegations"). Moreover, the Trustee's remaining causes of action rely on the same factual predicate as the fraudulent transfer claims. These claims are therefore also contradicted by the Essar Affiliates Adversary Proceeding and likewise should be dismissed.

*In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1342–43 (11th Cir. 2017), is on point. There, the Eleventh Circuit affirmed a bankruptcy court's dismissal of a Complaint that alleged "plainly contradictory facts." *Id.* at 1342. The plaintiff in that case had incorporated allegations in its complaint from a separate lawsuit that directly contradicted the allegations against the defendant; the bankruptcy court dismissed for failure to state a claim. *Id.* at 1342-43; *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of a trustee's complaint for lack of standing due to contradictory allegations in complaint and facts of which court took judicial notice); *Oliver v. SD-3C LLC*, No. 11-cv-01260-JSW, 2016 U.S. Dist. LEXIS 146427, at *37-38 (N.D. Cal. Sept. 30, 2016) (conclusory attempt to disclaim inconsistent allegations fails to state a plausible claim). The Trustee's Complaint here suffers from the same infirmity as in *Fundamental Long Term Care*, except, even more damning, it has incorporated contradictory facts from related adversary actions.[15]

---

[15] Given the timing of the filing of the Complaint – nearly six months after the Effective Date, but only three weeks after the Term Loan Lenders' opposition to the SC Lenders' motion for partial summary judgment in the New York Action – and given that the Trustee's allegations against the SC Lenders are so at odds with his allegations in the Essar Affiliates

As the Trustee's pleadings make clear, the SC Lenders are the victims here.  The Court should dismiss the Trustee's Complaint in light of the Trustee's contradictory allegations and not subject the SC Lenders to further financial loss in connection with this "billion dollar scam."

## II.    The Complaint Fails to State a Claim for Constructive Fraudulent Transfer

A constructively fraudulent transfer is one in which the transferor (a) received less than reasonably equivalent value in exchange for the transfer and (b) was insolvent at the time of the transfer or was rendered insolvent thereby.  *See* 11 U.S.C. § 548(a)(1)(B); *Aphton Corp. v. Sonafi Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 89 (Bankr. D. Del. 2010); Minn. Stat. §513.44.[16]  When pleading constructive fraud, "boilerplate and conclusory allegations will not suffice.  Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418; s*ee, e.g.*, *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (dismissing claim that "simply alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)"); *In re Crucible Materials Corp.*, 2012 Bankr. LEXIS 5102, at *20-21 (dismissing constructive fraudulent transfer claim where the Trustee "only provides a near

---

Adversary Proceeding, it is difficult not to conclude that the Trustee's Complaint is simply a means of providing cover to the Term Loan Lenders' own (contract-breaching) Claim Objection against the SC Lenders.  At a minimum, the Trustee has acted in coordination and concert with the Term Loan Lenders, which are beneficiaries of the Trust and which, through their agent, U.S. Bank, improperly deprived the SC Lenders of distributions under the Plan by filing the eleventh-hour Claim Objection in violation of the Intercreditor Agreement.

[16] "The elements of an avoidable transfer under UFTA or UFCA, as adopted by individual states, do not substantially vary from the elements set forth in [the Bankruptcy Code]."  *Charys Liquidating Trust v. Hades Advisors, LLC (In re Charys Holding Co.)*, No. 08-10289 (BLS), 2010 Bankr. LEXIS 2072, at *18 (Bankr. D. Del. July 14, 2010).  As such, typically the court analyzes state law fraudulent transfer claims in tandem with Bankruptcy Code section 548 and applies the same defenses.  *See id.* (analyzing state constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B)); *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*, No. 08-11006 (BLS), 2011 Bankr. LEXIS 3553, at *36 (Bankr. D. Del. Sept. 15, 2011)(analyzing state actual fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(A)).

verbatim recitation of the elements of section 548").[17]  Here, even if the Trustee had not incorporated the FAC by reference and the fraudulent transfer stood alone, he still would fail to adequately plead a claim.

## A. The Trustee Has Not Alleged Any Facts in Support of His Legal Conclusion Regarding Insolvency

The Trustee has not pleaded any facts – let alone specific facts – supporting the conclusory allegation that the Debtors were insolvent at the time of any transfer.  In fact, the Trustee is unwilling to say, even in conclusory terms, that ESML was insolvent at the time of each challenged transfer: "However, the Debtors were insolvent at the time that many, if not all, of these transfers were made." Compl. ¶ 26 (emphasis added).  Instead, in place of actual facts, the Trustee simply provides a near verbatim recitation of Bankruptcy Code section 548(a) to allege insolvency.  *Compare* Compl. ¶¶ 77, 89, *with* 11 U.S.C. § 548(a)(1)(B)(ii)(I).[18]

Under the balance sheet test, a plaintiff must establish the fair value of the assets and liabilities of the transferor *at the time of the transfer. Peltz v. Hatten*, 279 B.R. 710, 742-43 (D. Del. 2002)).  Although the Trustee is not required to prove insolvency at the pleading stage, the

---

[17] Constructive fraudulent transfer claims may be subject to the heightened pleading standards of Federal Rule 9(b) although the issue is not settled. *Compare Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) (requiring constructive and actual fraudulent transfer claims be plead with specificity); *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud"); *Pardo v. Gonzaba (In re APF Co.)*, 308 B.R. 183, 188 (Bankr. D. Del. 2004) (applying Rule 9(b) to fraudulent conveyance claim) *with Astropower Liquidating Trust v. Xantrex Tech. Inc. (In re Astropower Liquidating Trust)*, 335 B.R. 309, 333 (Bankr. D. Del. 2005).

[18] Although Bankruptcy Code section 547(f) creates a presumption in preference actions that the debtor was insolvent during the ninety (90) days preceding the petition date, no such presumption exists with respect to either fraudulent transfer claims or preference claims challenging transfers made outside of the 90-day window. *See generally* 11 U.S.C. § 547, 548; *Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*, 507 B.R. 452, 473 (Bankr. S.D.N.Y. 2014) ("There is no presumption of insolvency in a fraudulent conveyance action as there is in the preference statute . . . If a trustee shows that the debtor was insolvent at a time subsequent to the date of the alleged fraudulent transfer, the trustee must also show that the debtors' financial condition did not change during the interim period.").

Complaint must at least contain some factual allegation to support the Trustee's legal conclusion. *See Global Link*, 327 B.R. at 718 (plaintiff failed to adequately plead constructive fraud where it "present[ed] no information on the [d]ebtors' financial status"); *Miller v. Welke (In re United Tax Grp., LLC)*, Adv. No. 16-50088 (LSS), 2016 Bankr. LEXIS 4322 at *8  (Bankr. D. Del. Dec. 13, 2016) (inadequate conclusory allegations of insolvency); *Zazzali v.  Hirschler Fleischer, P.C.*, 482 B.R. 495, 520-21 (D. Del. 2012) (same).

The Trustee's obligation to plead specific factual allegations is compelling particularly when the Trustee has had ample opportunity to investigate the Debtors and the challenged transactions. *See Dixon v. Ruth (In re Gluth Bros. Constr., Inc.)*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (dismissing fraudulent transfer claim where "[a]s the creditor trustee, the [p]laintiff should have enough access to information on the [d]ebtor's finances to be able to allege at least some minimal factual support").  The deficiencies in the Complaint are troubling especially here, when the bankruptcy case has been ongoing since July 2016, the Trustee had been in place for six months before filing the Complaint against the SC Lenders, and the Trustee evidently had ample information to file a 95-page second amended complaint against the Essar Affiliates.  Indeed, the Court may take judicial notice of the Trustee's extensive review of the Debtors' records and other documents in connection with his duties under the Plan and Trust Agreement. *See, e.g., Second Joint Motion of the Disbursing Agent, the SC Litigation Trustee, and the UC Litigation Trustee for an Order Extending Deadline for Filing Objections to Claims*, No. 16-11626 (BLS), [D.I. 1549].

Despite having reviewed these documents and records that contain information sufficient for the Trustee to properly plead a claim (if one exists), the Complaint contains nothing more than conclusory allegations and a formulaic recitation of the elements of a constructive fraudulent transfer

under Bankruptcy Code section 548(a)(1)(B).  It does not contain any facts accompanying its legal conclusions that, at the time of the transfers, the Debtors were insolvent.

Because the Trustee failed to allege *any* facts supporting the allegation of insolvency, the constructively fraudulent transfer claims must be dismissed.

### B. The Trustee Has Not Alleged Sufficient Facts to Support the Allegation That the Debtors Received Less Than Reasonably Equivalent Value

The Trustee's allegations about reasonably equivalent value are as conclusory, and as legally defective, as his allegations about insolvency.  Determining whether "reasonably equivalent value" supported a challenged transfer requires a two-part analysis.  First, "a court must consider whether, based on the circumstances *at the time of the transfer*, it was legitimate and reasonable to expect some value accruing to the debtor."  *Pension Transfer Corp. v. Hollrah (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212 (3d Cir. 2006) (emphasis added) (citations omitted) (internal quotation marks omitted).  This condition is satisfied based on the expectation of value at the time of the transfer, even if hindsight reveals that the expectation was inaccurate.  *See Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 152 (3d Cir. 1996) ("as long as there is *some chance* that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find value has been conferred") (emphasis added).  Second, if the court finds some value existed, the next inquiry is whether the value was, *at the time of the transfer*, roughly equivalent to what was given.  *See In re Fruehauf Trailer Corp.*, 444 F.3d at 212-13.

Based on this standard, the Complaint fails to allege the absence of reasonably equivalent value.  The Trustee is quite candid that his assessment of value is based on hindsight, focusing on the woeful state of the Project as it existed in 2016, rather than the conditions that existed years before

when Defendants agreed to loan money to the Project and received security interests in exchange therefor:

> [As] of the Petition Date, ESML was left with a half-completed iron ore pellet plant that will cost hundreds of millions of dollars more to finish; and ESML is burdened with over a billion dollars in claims asserted against it that are directly attributable to the failures of Essar Global and its numerous affiliates . . . to fulfill their obligations with respect to the Project.

Compl. ¶ 2 (emphasis added).  While the bankruptcy petition was filed in 2016, the initial transfer of the security interests to the SC Lenders occurred with the extension of their loans in 2010.  *See id.* at ¶ 23; Bailey Decl., Ex. A.  The Trustee's constructive fraudulent conveyance claims fail because he has not adequately alleged that ESML did not receive fair value *at the time of the transfer* in 2010.[19] *See, e.g., Global Link*, 327 B.R. at 718 (dismissing constructive fraud claim due to lack of information on the value of what was received in exchange); *OHC Liquidation Trust v. Discover Re (In re Oakwood Homes Corp.)*, 342 B.R. 59, 70 (Bankr. D. Del. 2006) ("reasonable equivalence [is] determined *as of the date of the transfer*." (emphasis added)) (citing *In re R.M.L.*, 92 F.3d at 154; *Peltz*, 279 B.R. at 737); *see also Duke and King Mo., LLC v. Nath Cos. (In re Duke and King Acq. Corp.)*, 508 B.R. 107, 134 (Bankr. D. Minn. 2014) (under Minnesota law).

C. The Complaint Demonstrates that the Loan Proceeds Provided by Defendants, Not EPIL's Contract Performance, Was the Value Exchanged for the Security Interests

This Complaint is legally untenable for what it admits as a well as what it omits.  This Complaint "talks its way out" of a valid fraudulent transfer claim. *Villareal*, 839 F.3d at 971

---

[19] The Trustee's improper hindsight analysis is also reflected in his strange focus on EPIL's supposed blunder in securing supplier credit facilities in Indian rupees rather than U.S. dollars. *See* Compl. ¶ 33. How EPIL was supposed to divine, in 2010, that the exchange rate would shift in an unfavorable way years down the road, and how this idea even fits into fraudulent transfer law, is unexplained in the Complaint. But for the bare assertion that the SC Lenders "should have known" that the unfavorable exchange rate allegedly would result in a funding shortfall, it is difficult to ascertain how the Trustee seeks to hold the SC Lenders responsible for the alleged deterioration in the rupee-dollar exchange rate. *See id.* at ¶ 112.

("plaintiff . . . can plead himself out of court."); *Best Canvas*, 713 F.2d at 621 ("party is bound by the admissions in his pleadings."). The Trustee's effort to characterize EPIL's inept or incomplete contract performance (as of 2016) as the consideration for transfers made, directly or indirectly, to Defendants years prior is impeached within the four corners of the Complaint as well as by key transaction documents upon which the action relies but which the Trustee tries to downplay.

It is now well-established that value supporting a transfer can be indirect, especially when the value flows to an affiliate of a corporate transferor. *See Mellon Bank N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635 (3d Cir. 1991) (reasonably equivalent value for a debtor guaranteeing an affiliate's debt can be strengthening of the corporate group); *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide Ltd.)*, 139 F.3d 574, 578-79 (7th Cir. 1998) (indirect benefits may include inter-corporate "synergy" and safeguarding a source of supply).

Moreover, when two affiliated corporations operate "as a single economic unit, it is virtually impossible for money to have been advanced to one without benefit to the other." *In re Augie/Restivo Baking Co., Ltd.*, 87 B.R. 242, 247 (E.D.N.Y. 1988). Here, the Complaint leaves no doubt that EPIL, ESML and other Essar Affiliates existed as a "single economic unit" to develop the Project, and that Defendants' loans were critical to the Project. *See* FAC ¶¶ 5, 369; Compl. ¶ 3. The Complaint could not be more candid and emphatic about ESML's alter ego status. The Trustee is bound by the allegation that ESML and EPIL were part of the same economic unit, and so the benefit of Defendants' loans to ESML was not indirect. Rather, Defendants loaned money directly to a singular "Essar" notwithstanding the formal but sham appearance of separateness between EPIL and ESML. Because the loan to the Debtors (*i.e.*, the single business enterprise) was direct, the value exchanged for the security interest was the money lent, not EPIL's contract performance.

### III.    The Complaint Fails to State a Claim for Actual Fraudulent Transfer

The Trustee's Causes of Action alleging actual fraudulent transfer fail for the same reasons as set forth with respect to constructive fraudulent transfer above.   These claims fail for the additional reason that the Trustee has not adequately alleged the requisite intent of the transferor.   To avoid an actual fraudulent transfer, a plaintiff must show that the transfer was made with "actual intent to hinder, delay or defraud any creditor of the debtor." 11 U.S.C. § 548(a)(1)(A); Minn. Stat. § 513.44.

A claim for actual fraudulent transfer must satisfy the heightened particularity requirements of Rule 9(b).

> 'To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.' The rigor with which Rule 9(b) is applied has been relaxed in some instances 'where the factual information is peculiarly within the defendant's knowledge or control.' But the relaxed application requires that a 'complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity.' At all events, 'conclusory allegations will not suffice.'

*Friedberg v. Barefoot Architect, Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018) (internal citations omitted); *see also Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 173 n.101 (3d Cir. 2002); *In re Oakwood Home Corp.*, 325 B.R. at 698; *In re Duke and King Acq. Corp.*, 508 B.R. at 134.

First, the Trustee's intentional fraudulent transfer claims fail even without regard to the strict requirements of Rule 9(b).   There is no allegation in the Complaint that *the Debtors* transferred assets with an intent to defraud creditors.[20]   Instead, the Complaint offers the conclusory, passive

---

[20] It is the *transferor's* intent that determines whether actual fraud has occurred. *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian)*, 573 F. App'x 154. (3d Cir. Aug. 11, 2014); *see also* Minn. Stat. § 513.44 (transfer voidable if the *debtor* made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor); *In re Duke and King Acq. Corp.*, 508 B.R. at 134 ("[I]f a transfer is to be avoided under the

voice allegation that each "of the . . . Fraudulent Transfers was made with the actual intent to hinder,

delay, or defraud present or future creditors" without specifying who harbored such intent.  Compl.

¶¶ 64, 91; *see Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs., Inc.)*, 362

B.R.149, 156 (Bankr. D. Del. 2007) (dismissing intentional fraudulent transfer claim where

allegations of fraud were not sufficiently particular because "[t]o provide fair notice the complainant

must go beyond merely parroting statutory language.").

Second, the Complaint's conclusory allegations of fraud in the "Cause of Action" section are

not supported by, and indeed are contradicted by, the narrative factual section of the Complaint.  The

gist of the narrative section of the Complaint is that ESML got a bad deal, in retrospect, because it

ultimately received materially defective contract performance from EPIL.  There is not the slightest

hint that any actor involved in the Transfers was motivated by thoughts of defrauding or delaying

ESML's unsecured creditors.  To the contrary, the Complaint freely admits the motives behind the

underlying transactions:

> The decision to restructure the contracts governing the Project through the 2010 Project
> Contracts was made largely to *minimize U.S. tax liability*, as well as to *take advantage
> of the additional lending secured* through EPIL [from Defendants] **. . .** To do this, the
> 2010 Project Contracts reallocated a substantial portion of the procurement obligations
> in existing Project Contracts to EPIL.

Compl. ¶ 22 (emphasis added).  *See PHP Liquidating, LLC v. Robbins (In re PHP Healthcare

Corp.)*, 128 F. App'x 839, 847 (3d Cir. 2005) (dismissal of actual fraudulent transfer claim under the

Bankruptcy Code and state law was proper where the plaintiff failed to allege any facts regarding

actual intent).

An intent to defraud creditors is not only at odds with the facts as alleged in the Complaint

but, in this case, incurably implausible.  There is nothing in the Complaint to suggest that the

---

rubric of actual fraud, Plaintiff must prove that the transferring debtor itself harbored the requisite intent to hinder,
delay, or defraud.").

Defendants were anything but arm's length creditors, no less than the other secured lenders. Shifting assets from one arm's length creditor to another does not serve the kind of asset-hiding/protecting motive that is the stuff of intentional fraudulent transfer claims. *See, e.g., Henry v. Lehman Commercial Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 1008 (9th Cir. 2006) (citing *Pioneer Liquidating Corp. v. San Diego Trust & Sav. Bank (In re Consol. Pioneer Mortg. Entities)*, 211 B.R. 704, 717 (S.D. Cal. 1997)) (discussing the "original" fraudulent conveyance law, the Statute of Elizabeth) (purpose of fraudulent transfer law is "to protect creditors from last-minute diminutions in the pool of assets in which they have interests. . . . [P]ayment to a fully secured creditor does not hinder, delay or defraud creditors because it does not put assets otherwise available in a bankruptcy distribution out of their reach."); *see also Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 55-56 (2d Cir. 2004) ("New York fraudulent conveyance law is . . . primarily concerned with transactions that shield company assets from creditors, not the manner in which specific debts were created."). Preferences between creditors are not unlawful. *See id.*; *Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987) ("The basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them.").

In all material respects this case is identical to *In Re Fedders North America, Inc.*, 405 B.R. 527 (Del. Bankr. 2009) (Shannon, J.), and should lead to the same result. There, as here, the complaint asserted a myriad of wrongs committed by various corporate insiders. There, as here, the complaint also asserted fraudulent transfer claims against two prepetition secured lenders. The Court dismissed the fraudulent transfer claims, both intentional and constructive, against the lenders. *See id.* at 545, 547.

Acknowledging that intent can be alleged and proven circumstantially via "badges" of fraud, the court nonetheless found the allegation of just one badge, insolvency at the time of the transfer, to be insufficient. *Id.* at 545. As noted above, the Trustee's wholly conclusory allegation of insolvency fails to adequately allege that single badge. The Trustee does not even name, let alone attempt to support with facts, any other recognized badge of fraud. *There are no badges of fraud identified in the Complaint.*

The *Fedders* court went on to observe that the disclosure of the debtor's transactions with the secured lenders in publicly filed documents "and the absence of facts indicating anything other than an arm's length relationship between Fedders and the Lenders" were simply inconsistent with a claim of intentional fraud. *Id.* The same observations apply to the Defendants' dealings with ESML. While the security interest provided by ESML to the SC Lenders was not publicly filed, it was acknowledged to ESML's other secured lenders – the Project Finance Lenders and the Term Loan Lenders – in a shared security agreement and the Intercreditor Agreement, among other documents. *See* Compl. ¶ 25; Bailey Decl., Exs. I, J.

There is an additional absurdity here not found in the *Fedders* case. As transaction documents identified in the Complaint demonstrate, ESML's assets cross-collateralized loans advanced by two other sets of lenders in addition to the Defendants here. Avoiding or diminishing the Defendants' security interests will only serve to increase the share of collateral available to the other secured lenders and, in particular, the share of the Term Loan Lenders, who have sought to deprive the SC Lenders of their distributions under the Plan via the eleventh-hour Claim Objection filed in violation of the Intercreditor Agreement. It is no coincidence that this action was motivated by, and is a copycat of, the Claim Objection filed by the Term Loan Lenders.

IV.    **The Trustee's Claim for Relief Under 11 U.S.C. § 502(d) is, at Best, Premature and Must Be Dismissed**

The Trustee's claim for disallowance or reduction of the SC Lenders' claims pursuant to 11 U.S.C. §§ 502(b) and (d) (the Sixth Cause of Action) is premature and must be dismissed because the Trustee merely seeks, but has not obtained, a judicial determination on the fraudulent transfer counts (the First through Fourth Causes of Action). In *In re Lids Corp.*, the Court addressed similar circumstances and held: "[t]o disallow a claim under section 502(d) requires a judicial determination that a claimant is liable." 260 B.R. 680, 684 (Bankr. D. Del. 2001). There, like here, the bankruptcy trustee merely had filed a cause of action seeking disallowance of claims pursuant to 11 U.S.C. § 502(d) but had not obtained a judicial determination against the transferee. *Id.* The Court dismissed the count, concluding that where the bankruptcy trustee "has merely commenced an adversary proceeding; that is not enough . . . Until the [trustee] obtains a judgment against [the transferee], . . . section 502(d) is not applicable." *Id.*; *see also Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 468 (Bankr. D. Del. 2018) (dismissing section 502(d) count where Court held that judicial determination on avoidance complaint is "a prerequisite to a claim under [s]ection 502(d)."); *In re AgFeed USA, LLC*, No. 13-11761 (BLS), 2015 Bankr. LEXIS 1403, at *11 (Bankr. D. Del. Mar. 11, 2015) (directing payment on a claim where "the mere allegation of recovery under Chapter 5 of the Bankruptcy Code is insufficient to disallow [a claim].").

The Sixth Cause of Action in the Complaint is predicated entirely on the Trustee's success on the First through Fourth Causes of Action of the instant adversary proceeding. *See* Compl. ¶¶ 104-06.[21] Critically, the Trustee does not even allege – much less proffer a single well-pleaded fact that

---

[21]  The allegations contained in those paragraphs in the Complaint are that:

would tend to establish – that the Trustee has obtained the requisite judicial determination mandated by *Lids* and its progeny.  And, obviously, the Trustee cannot at this point in time make such allegation or otherwise satisfy the legal standard established by *Lids*.  Accordingly, the Trustee's claim for disallowance or reduction of the SC Lenders' claims must be dismissed as premature.

### V.    The Trustee Has Not and Cannot State a Claim for Equitable Subordination Under 11 U.S.C. § 510(c)

The Trustee has failed to plead any facts whatsoever that would warrant equitable subordination of the SC Lenders' claims.  "The party seeking to subordinate a claim has the initial burden of coming forward with material evidence to overcome the prima facie validity accorded to proofs of claim."  *United States v. State St. Bank & Trust Co.*, 520 B.R. 29, 80 (Bankr. D. Del. 2014).  Three conditions must be satisfied before exercise of the power of equitable subordination is appropriate: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.  *Shubert v. Lucent Techs. Inc. (In re Winstar Comm'ns., Inc.)*, 554 F.3d 382, 411 (3d Cir. 2009).  Bankruptcy Courts routinely dismiss counts for equitable subordination where, as here, the plaintiff fails to plead facts sufficient to establish all three requirements.  *See In re Jevic Holding Corp.*, 2011 Bankr. LEXIS 3553, at *47-48 (dismissing equitable subordination claim where committee did not sufficiently plead inequitable conduct); *Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion*

---

SC Lenders are transferees of certain . . . Fraudulent Transfers avoidable under section 544 of the Bankruptcy Code.  SC Lenders have not repaid the amount of the . . . Fraudulent Transfers, or turned over such property to the Debtors, for which SC Lenders are liable under section 550 of the Bankruptcy Code.  Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of [the] SC Lenders, including those asserted in Claim No. 144 and Claim No. 154, against the Debtors must be disallowed until such time that SC Lenders pays [sic] to Plaintiff an amount equal to the aggregate amount of the Fraudulent Transfers received by SC Lenders, plus interest thereon and costs.

*Enters.)*, Adv. No. 10-50514 (KG), 2010 Bankr. LEXIS 2720, at \*18, 22 (Bankr. D. Del. Sept. 1, 2010) (same).

### A.  The Trustee's Contention that the SC Lenders Engaged in Inequitable Conduct is Entirely Unsubstantiated

The Trustee does not plead that the SC Lenders – traditional, non-insider lenders to the Debtors who acted within the scope of normal lender-borrower behavior – engaged in inequitable conduct. "The most important factor in determining if a claimant has engaged in inequitable conduct for the purposes of equitable subordination is whether the claimant was an insider or outsider in relation to the debtor at the time of the act." *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 69 (Bankr. D. Del. 2002). When a defendant is not an insider, evidence of "more egregious conduct such as fraud, spoliation or overreaching is necessary." *In re Winstar Commc'ns, Inc.*, 554 F.3d at 412; *see In re Jevic Holding Corp.*, 2011 Bankr. LEXIS 3553, at \*47-48 (dismissing equitable subordination claim where committee did not sufficiently plead non-insider engaged in fraud, spoliation or overreaching).

"In the context of a lender-defendant, courts have refused to apply insider status absent a showing of a high level of control by the lender." *In re Champion Enters.*, 2010 Bankr. LEXIS 2720, at \*18, 22 (dismissing count were the committee did not allege that defendant-lenders "took any actions that were outside their rights under the [applicable agreement] or normal lender behavior."). The Trustee has not alleged that the SC Lenders were insiders; nor does the Trustee allege that the SC Lenders exercised any control over the Debtors. Accordingly, there is no basis to conclude that SC Lenders are insiders of the Debtors. Consequently, in order to establish a claim for equitable subordination – in order for the Trustee to state a claim for relief – the Trustee must plead that the SC Lenders, as non-insiders, engaged in "more egregious" behavior. The Trustee has not so pleaded.

As a matter of law, "obtaining a security interest – without more – is not inequitable conduct." *Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*, 527 B.R. 169, 177 (D. Del. 2015). Rather, "[t]he party must have engaged in some parallel behavior that demonstrates that it unfairly obtained the security interest." *Id.* In *Optim Energy*, the Delaware District Court affirmed the bankruptcy court's order dismissing a count for equitable subordination where the plaintiff merely alleged that a lender engaged in a transaction that was designed to "prioritize [the lender's] interest 'senior to trade creditors' and 'ahead of other bona fide creditors of the business.'" *Id.* The court reasoned that the allegation "merely describe[d] the mechanics of secured versus unsecured lending." *Id.*

Likewise, in *In re Champion Enters.*, the Court dismissed an equitable subordination count that merely described normal lender-borrower interactions. 2010 Bankr. LEXIS 2720, at \*25-26. In that case, non-insider lenders acknowledged amending a credit agreement to achieve increased interest rates, amendment fees, prepayments, and additional collateral, "thereby improving [the non-insider lenders'] position and shifting credit risk from the [non-insider lenders] to others." *Id.* at \*25. The Court determined that "inequitable conduct requires behavior far more egregious than [the non-insider lenders'] actions related to amending [the credit agreement]." *Id.* Critically, the Court found that the complaint did not allege that the non-insider lenders' actions "violated the [applicable credit agreement], applicable law, or even that the terms of the amendments are beyond the scope of normal lender-borrower agreements in distressed debt negotiations." *Id.* at \*26. The Court held that "[n]ormal lender conduct does not amount to inequitable conduct for equitable subordination purposes" because "[c]ourts commonly recognize that a lender's goal 'to recoup the most amount of money as possible on [its] . . . loans, [is] an understandable and permissible desire.'" *Id.* (internal citations omitted).

Here, as in *Optim Energy* and *Champion Enters.*, the Trustee alleges merely that the SC Lenders engaged in normal lender-borrower agreements, obtaining a lien on and security interest in the Debtors' collateral.    The Trustee's allegations do not rise to the level of "more egregious conduct" necessary to maintain an action for equitable subordination.    Specifically, the Trustee claims that "by seeking security interests in the Debtors' property, the SC Lenders effectively represented that they would provide the $182.75 million of financing that was required to complete the Procurement Obligations under the Supply and Engineering Contract." Compl. ¶ 112.  The Trustee then asserts that "the rupee-dollar exchange rate continued to deteriorate as ESML executed the Minnesota Mortgage and, later, the Amended Security Agreement – both of which ultimately accrued to the SC Lenders' benefit." *Id.*  Finally, the Trustee speculates "[a]s of the date of the Amended Security Agreement, the SC Lenders' [sic] should have known that there was a financing shortfall of $30-40 million.  The SC Lenders made no effort to remedy the financing shortfall." *Id.* Assuming *arguendo* the Court ignores that the Trustee has utterly failed to proffer any well-pleaded facts that warrant the Court's consideration,[22] even if the Court indulges the Trustee's liberal construction of the pleading standard and accepts his contentions as fact, nothing therein rings of fraud, spoliation or overreaching.  As in *Champion Enters.*, the allegations here do not describe the SC Lenders' actions as violating any credit agreement, applicable law or even that the SC Lenders' actions were beyond the scope of normal lender-borrower conduct.  Because the Trustee has failed to allege anything other than normal lender-borrower behavior – much less fraud, spoliation or overreaching – the Trustee cannot make out a *prima facie* claim for equitable subordination, and the Seventh Cause of Action must be dismissed.

---

[22] "The trustee bears the burden of presenting material evidence of unfair conduct." *See In re Winstar Commc'ns, Inc.*, 554 F.3d at 412. "Particularized fact pleading regarding the allegedly egregious behavior is required." *In re Champion Enters.*, 2010 Bankr. LEXIS 2720, at *24.

### B. The Trustee Has Not Alleged Facts to Show Injury to the Creditors or Conferring of an Unfair Advantage on the SC Lenders

Moreover, where "there is no inequitable conduct, there can be no resulting harm incurred by the estate or its creditors." *Bank of N.Y. Mellon Trust Co., N.A. v. Miller (In re Franklin Bank Corp.)*, 526 B.R. 527, 534 (D. Del. 2014). That is because "a creditor's claim should only be subordinated to the extent necessary to remedy the harm caused by that creditor's misconduct." *In re Winstar Comm'ns, Inc.*, 554 F.3d at 413. Because the Trustee has not alleged any facts to support the assertion that the SC Lenders behaved inequitably, he cannot establish that the Debtors' creditors suffered injury or that the SC Lenders enjoyed any unfair advantage. And the Trustee's conclusory allegations to the contrary do not make it so.

At bottom, even if the Court were to find that the Trustee sufficiently alleged that the SC Lenders behaved inequitably, the Trustee plainly has not pleaded a single fact to support the assertion that the Debtors' creditors sustained any injury or that the SC Lenders obtained an unfair advantage. As with the Trustee's inequitable behavior assertions, here the assertions are fatally infirm. Using the passive voice, and with no facts supporting his assertions, the Trustee contends that "creditors have been misled as to the true financial condition of Plaintiff, have been induced to extend credit and/or provide services without knowledge of the actual facts regarding Plaintiffs' [sic] financial condition, and are less likely to recover the full amounts due to them because of the [SC Lenders'] conduct." Compl. ¶ 111. Because the Trustee does not – and due to the deficient inequitable conduct assertions cannot – articulate with any particularity any facts to establish harm to any creditor or identify any unfair advantage to the SC Lenders, for this additional reason, the Seventh Cause of Action must be dismissed.

C. Equitable Subordination, in this Case, Is Inconsistent with the Provisions of the Bankruptcy Code Because the SC Lenders' Claims Should Be Allowed in Full

Finally, in addition to finding (i) that the SC Lenders' behavior, as pleaded by the Trustee, is not inequitable and (ii) that the Trustee has not alleged – and cannot allege – any injury to creditors or any advantage conferred on the SC Lenders, equitable subordination in this case is inconsistent with other provisions of the Bankruptcy Code.  In particular, the SC Lenders' claims should be deemed allowed claims under Bankruptcy Code section 502 because the Plan and the Intercreditor Agreement evidence the intent of the Debtors and the other secured lenders to treat the SC Lenders' claims *pari passu* with the other secured lenders' claims, which have been allowed and all of whom have received the distributions to which they were entitled under the Plan.  Equitable subordination is a "remedial rather than penal" doctrine designed "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233-34 (3d Cir. 2003) (internal citations omitted).  Because the Trustee cannot set forth facts to support a single factor required to subordinate the SC Lenders' claims and only unfairness to the SC Lenders would result from subordination, the Seventh Cause of Action must be dismissed.

**VI.    The Fifth Cause of Action in the Complaint Seeking Declaratory Relief Also Fails to State a Claim**

The Fifth Cause of Action must be dismissed because the Trustee fails to plead facts supporting the claim that the SC Lenders' security interests are invalid.  The Trustee merely pleads that the "mortgage and security interests and all parts thereof are null, void, and of no force or effect because ESML did not receive any consideration for the granting of the mortgages and security interests." Compl. ¶ 99.  This declaratory judgment cause of action is merely a rephrasing of the

Trustee's other causes of action.  For the same reason that those causes of action fail – specifically, because the Trustee's contradictory allegations render his claim for relief implausible – the declaratory judgment cause of action also must be dismissed.  *See, e.g., Tisdale v. Kaufman and Broad Mortg. Co.*, No. A-17-CA-810-SS, 2017 U.S. Dist. LEXIS 164423, at *10 (W.D. Tex. Oct. 4, 2017) (request for declaratory judgment "facially implausible and must be dismissed"); *Rudeen v. Allstate Ins. Co.*, No. 3:16-CV-1827 (MPS), 2018 U.S. Dist. LEXIS 45252, at *20-21 (D. Conn. Mar. 20, 2018) (dismissing claim for declaratory judgment where plaintiff's interpretation of contract is "implausible").

**[Remainder of Page Intentionally Left Blank]**

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, with prejudice, in its entirety.

Dated: November 5, 2018  
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)  
Daniel B. Rath (No. 3022)  
Jennifer L. Cree (No. 5919)  
919 Market Street, Suite 1800  
Wilmington, Delaware 19801  
Telephone:    (302) 467-4400  
Facsimile:    (302) 467-4450  
Email: landis@lrclaw.com  
       rath@lrclaw.com  
       cree@lrclaw.com

-   and –

**BAILEY DUQUETTE P.C.**  
James D. Bailey (*pro hac vice*)  
100 Broadway, 10th Floor  
New York, NY 10005  
Telephone: (212) 658-1946  
Facsimile: (866) 233-5869  
Email: james@baileyduquette.com

*Counsel to Defendants Central Bank of India*
*and Export Import Bank of India*