## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Chapter 11 |
| Debtors. | Case No. 16-11626 (BLS) |
| | (Jointly Administered) |
| SC MESABI LITIGATION TRUSTEE, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 18-50555 (BLS) |
| CENTRAL BANK OF INDIA AND EXPORT IMPORT BANK OF INDIA, | |
| Defendants. | |

## REPLY BRIEF OF DEFENDANTS CENTRAL BANK OF INDIA AND EXPORT IMPORT BANK OF INDIA IN SUPPORT OF THEIR MOTION <u>TO DISMISS THE COMPLAINT</u>

Dated: April 12, 2019
    Wilmington, Delaware

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, Delaware 19801

**BAILEY DUQUETTE P.C.**
James D. Bailey (*pro hac vice*)
100 Broadway, 10th Floor
New York, NY 10005

*Attorneys for Defendants Central Bank of India and Export Import Bank of India*

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.     The Trustee Fails to Address Defendants' Argument that the Trustee Has Pleaded Himself Out of Court by Asserting Contradictory Allegations ........................................................ 2

II.    The Trustee's Answering Brief Fails to Point to Allegations in the Complaint that Would Salvage His Deficient Constructive Fraudulent Transfer Claims ........................................ 5

       A.   The Trustee Does Not Allege That Debtor Was Insolvent *At The Time* of the Transfers 5

       B.   The Complaint Fails to Allege the Absence of Reasonably Equivalent Value ................ 8

III.   The Complaint Fails to Allege Any Intentional Fraudulent Transfer ................................. 9

IV.    The Trustee Has Not Refuted that Its Claim for Relief Under 11 U.S.C. § 502(d) Is, at Best, Premature and Must Be Dismissed .......................................................................... 11

V.     The Trustee Has Not Imputed and Cannot Impute EPIL's Alleged Conduct to the SC Lenders for Purposes of Equitable Subordination Under 11 U.S.C. § 510(c) .................... 13

CONCLUSION .............................................................................................................. 15

TABLE OF AUTHORITIES

**Cases**

*Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC),*
    587 B.R. 445 (Bankr. D. Del. 2018) .................................................................. 10, 13

*Carson Optical Inc. v. eBay Inc.,*
    202 F. Supp. 3d 247 (E.D.N.Y. 2016).................................................................... 4

*Depomed Inc. v. Purdue Pharma L.P.,*
    No. 13-571 (JAP), 2013 U.S. Dist. LEXIS 167630 (D.N.J. Nov. 26, 2013) ...................... 12, 13

*Fisk v. Letterman,*
    401 F. Supp. 2d 362 (S.D.N.Y. 2005) .................................................................... 4

*Garcia v. Garcia (*In re Garcia),
    494 B.R. 799 (Bankr. E.D.N.Y. 2013) .................................................................. 8

*Geltzer v. Xavarian High Sch. (In re Akanmu),*
    502 B.R. 124 (Bankr. E.D.N.Y. 2013) .................................................................. 8

*Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.),*
    327 B.R. 711 (Bankr. D. Del. 2005) .................................................................... 8

*Goldstein v. BRT, Inc. (In re Universal Mktg.),*
    460 B.R. 828 (Bankr. E.D. Pa. 2011).................................................................... 8

*In re Augie/Restivo Baking Co., Ltd.,*
    84 B.R. 315 (Bankr. E.D.N.Y. 1988) .................................................................... 5

*In re Augie/Restivo Baking Co., Ltd.,*
    87 B.R. 242 (E.D.N.Y. 1988).............................................................................. 5

*In re Bayside Prison Litig.,*
    157 F. App'x 545 (3d Cir. 2005)........................................................................... 12

*In re Kaplan Breslaw Ash,*
    264 B.R. 309 n.72 (Bankr. S.D.N.Y. 2001) .......................................................... 5

*In re Lids Corp.,*
    260 B.R. 680 (Bankr. D. Del. 2001) ................................................................ 12, 13

*In re Worldwide Direct, Inc.,*
    No. 99-108 (MFW), 2000 Bankr. LEXIS 2222 (Bankr. D. Del. Nov. 22, 2000) ............... 12

*James v. Gage*,
   No. 15-CV-106 (KMK), 2019 U.S. Dist. LEXIS 55229 (S.D.N.Y. Mar. 29, 2019) .................. 4

*Leibowitz v. Parkway Bank & Tr. Co. (In re Image Worldwide, Ltd.)*,
   139 F.3d 574 (7th Cir. 1998) ........................................................................................ 5

*Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*,
   No. 15-51069 (CSS), 2017 Bankr. LEXIS 1150 (Bankr. D. Del. Apr. 27, 2017) ................... 14

*Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L., Inc.)*,
   92 F.3d 139 (3d Cir. 1996) ........................................................................................... 7

*Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse (In re Champion Enters., Inc.)*,
   No. 10-50514 (KG), 2010 Bankr. LEXIS 2720 (Bankr. D. Del. Sept. 1, 2010) ...................... 14

*Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*,
   590 B.R. 211 (Bankr. D. Del. 2018) .............................................................................. 14

*Official Comm. of Unsecured Creditors of Vivaro Corp. v. Leucadia Nat'l Corp. (In re Vivaro Corp.)*,
   524 B.R. 536 (Bankr. S.D.N.Y. 2015) .......................................................................... 5, 8

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*,
   No. 08-11006 (BLS), 2011 Bankr. LEXIS 3553 (Bankr. D. Del. Sep. 15, 2011) ...................... 7

*Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*,
   326 B.R. 301 (Bankr. D. Del. 2005) ............................................................................ 6, 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 17-CV-2230 (VSB), 2019 U.S. Dist. LEXIS 45068 (S.D.N.Y. Mar. 19, 2019) .................. 4

*Seitz v. Frorer (In re Covenant Partners, L.P.)*,
   531 B.R. 84 (Bankr. E.D. Pa. 2015) .............................................................................. 11

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
   403 F.3d 43, 56 (2d Cir. 2005) ..................................................................................... 9

*Sher v. JP Morgan Chase Funding Inc. (In re TMST, Inc.)*,
   518 B.R. 329 (Bankr. D. Md. 2014) .............................................................................. 11

*Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest. Inc.)*,
   337 B.R. 495 n.5 (Bankr. S.D.N.Y. 2006) ...................................................................... 5

*Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*,
   582 B.R. 846 (Bankr. D. Del. 2018) .............................................................................. 13

*Talley v. Christiana Care Health System*,
   No. 17-926-CJB, 2018 U.S. Dist. LEXIS 175082 (D. Del. Oct. 11, 2018) ................................ 4

*Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co., Ltd)*,
   860 F.2d 515 (2d Cir. 1988) ........................................................................................................ 5

*United States v. State St. Bank & Trust Co.*,
   520 B.R. 29 (Bankr. D. Del. 2014) ............................................................................................ 15

*Webxchange Inc. v. Dell Inc.*,
   No. 08-132-JFF, 2009 U.S. Dist. LEXIS 121165 (D. Del. Dec. 30, 2009) .............................. 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 1

Fed. R. Civ. P. 8 .............................................................................................................................. 2

Fed. R. Civ. P. 9(b) ....................................................................................................................... 10

Defendants Central Bank of India and Export Import Bank of India (the "SC Lenders" or "Defendants") submit this reply brief in support of their motion to dismiss the Complaint of Bradley E. Scher, the SC Mesabi Litigation Trustee (the "Trustee") as successor-in-interest to Essar Steel Minnesota LLC ("ESML" or "Debtor"), for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In further support of the Motion, Defendants respectfully state as follows:

## INTRODUCTION

The Trustee's Answering Brief cannot save his flawed Complaint.  The Trustee can find no support for key elements of his claims in the Complaint.  For example, the Trustee fails to find an allegation in his Complaint that the Debtor was insolvent *at the time* of the challenged transfers to the SC Lenders (impairing his constructive fraudulent transfer claims), and similarly fails to find an allegation that *the Debtor* engaged in the transfers with intent to defraud creditors (impairing his intentional fraudulent transfer claims).

Most fundamentally, the Trustee cannot – indeed, he does not even try to – reconcile the contradictory allegations of the First Amended Complaint ("FAC") against Essar Global and its affiliates (incorporated by reference into the Complaint) with his contradictory allegations against the SC Lenders.  In contradicting himself in his pleading, the Trustee is no longer entitled to the inference of the truthfulness of his allegations and, absent this inference, fails to adequately plead his claims.

The Trustee's inability to set forth a cogent story as to how, on the one hand, ESML's officers and directors participated in a fraudulent single business enterprise with its affiliates, and, on the other, the "breach" of the obligations of one of those affiliates to ESML impairs the SC Lenders' claims, raises the larger question as to why the Trustee continues to pursue this action against the SC Lenders at all.  As we set forth in our Opening Brief, we initially surmised

that the Trustee brought this action to provide cover for the Term Loan Lenders who were defending a lawsuit for filing a claim objection against the SC Lenders in alleged breach of the Intercreditor Agreement.[2]  Since then, however, the Term Loan Lenders, along with the other remaining set of secured lenders, the Project Finance Lenders, have sold their interest in the Litigation Trust to Essar Energy Solutions Limited.[3]  In other words, the two remaining beneficiaries of the Litigation Trust are the Defendants here (the SC Lenders) and an affiliate of the Essar Group, the defendants in the Trustee's other adversary action.  Successful recovery against the SC Lenders would inure solely to the benefit of Essar, the same group that the Trustee is suing for allegedly orchestrating an "illegal shell game" to defraud creditors.  The SC Lenders, on the other hand, are bona fide secured lenders who provided over $150 million to the doomed Project.  In lieu of the Trustee withdrawing this case, and for the reasons set forth herein and in our Opening Brief, the SC Lenders ask the Court to dismiss the Complaint with prejudice.

## **ARGUMENT**

### I.    The Trustee Fails to Address Defendants' Argument that the Trustee Has Pleaded Himself Out of Court by Asserting Contradictory Allegations

In his Answering Brief, the Trustee completely misses the point of the SC Lenders' first – and primary – basis for dismissing the Complaint.  The SC Lenders' argument is this: in alleging contradictory facts, the Trustee effectively has cancelled out necessary elements of his claims.  In doing so, he has created a fatal Rule 8 problem for himself and pleaded himself out of Court.

The SC Lenders have not – as the Trustee would have it – confused alter ego liability with substantive consolidation.  And the SC Lenders certainly do not take the position that

---

[2] *See* Opening Br., pp. 13-14 and p. 19, n.15.

[3] *See* Transfers/Assignment of Claims from ICICI Bank Limited, Singapore Branch and U.S. Bank N.A. to Essar Energy Solutions Limited, Dkt. Nos. 1592-1595. Following a recent decision on the SC Lenders' motion for partial summary judgment against U.S. Bank (as agent for the Term Loan Lenders), the SC Lenders have agreed to withdraw the lawsuit in New York, and the Term Loan Lenders will be withdrawing their claim objection to the SC Lenders' claims in this bankruptcy.

alleging alter ego liability means a subsidiary cannot sue an affiliate.  Indeed, that the Trustee's contradictory allegations relate to ESML and EPIL being alter egos is beside the point.  *Any* contradictory allegation that negates a necessary element of a claim can result in the dismissal of that claim.  By way of example, if a plaintiff brings a breach of contract claim but alleges elsewhere that the defendant had performed the contract, the plaintiff would have failed to adequately plead its claim for breach.  Similarly, if a plaintiff had claimed negligence but alleged elsewhere that the alleged tortfeasor had acted reasonably, the negligence claim would fail.

It is the same here.  The Trustee has contradicted himself and negated necessary elements of his causes of action against the SC Lenders.  In fact, the contradictory allegations here relate to, in the words of the Trustee, the "one vital fact" that provides the basis for all the Trustee's claims.  *See* Answering Br. ¶ 1.  Namely, the Trustee's case against the SC Lenders rests entirely on the premise that the SC Lenders did not lend directly to the Debtor, ESML, but derived their liens and claims by virtue of an assignment from EPIL.  According to the Trustee, EPIL's liens are voidable because it breached its obligations to the Debtor.  Yet in the same Complaint (through its incorporation of the FAC), the Trustee alleges that EPIL and the Debtor were part of a fraudulent "single business enterprise," and that the officers and directors of the Debtor were the active perpetrators of this fraud.  If these allegations are to be credited, ESML had no reasonable expectation of performance by EPIL, as the two entities together were defrauding the enterprises' creditors (including the SC Lenders), and EPIL could not have breached obligations to ESML that were fictitious in the first place.  Without this purported breach, the Debtor has no defense against the SC Lenders' claims.  Similarly, if the Trustee's allegations are to be credited, the SC Lenders' loans were to the "enterprise," and not to an arm's length affiliate of the Debtor. In such case, the consideration for the SC Lenders' liens was not EPIL's performance to ESML

(which was never expected in the first place), but the SC Lenders' loans (which are not in dispute).  The allegations in the FAC thus directly contradict the allegations in the Complaint.

There is ample caselaw holding that a plaintiff can plead itself out of court by alleging inconsistent facts.  Defendants cite a number of these cases in their Opening Brief.  *See* Opening Br., pp. 18-19.  The Trustee's opposition does not address a single one of these cases, perhaps because he knows there is no way to reconcile his contradictory allegations in a way that will not torpedo one of his two pleadings.   There are numerous other cases in support of this proposition not relied on in the Defendants' Opening Brief.  *See, e.g.*, *Talley v. Christiana Care Health System*, No. 17-926-CJB, 2018 U.S. Dist. LEXIS 175082, at *13, n.4 (D. Del. Oct. 11, 2018) ("While the Court must accept as true all well-pleaded facts at the Rule 12(b)(6) stage, it need not accept allegations that are contradicted by other allegations in the FAC."); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 17-CV-2230 (VSB), 2019 U.S. Dist. LEXIS 45068, at *23-29 (S.D.N.Y. Mar. 19, 2019) (dismissing Complaint where deposition attached to Complaint contradicted allegations in Complaint); *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[W]here [the] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (quotation marks omitted); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The [c]ourt [] is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.") (citation omitted); *James v. Gage*, No. 15-CV-106 (KMK), 2019 U.S. Dist. LEXIS 55229, at *47-48 (S.D.N.Y. Mar. 29, 2019) (same).

In an effort to confuse the legal analysis, the Trustee falsely and inexcusably accuses us of relying on a reversed bankruptcy decision, *In re Augie/Restivo Baking Co., Ltd.*, 87 B.R. 242, 247 (E.D.N.Y. 1988) ("*Augie 2*"), that substantively consolidated the Chapter 11 cases of two separate corporations. First, we cite this case in an unrelated section of our Opening Brief. Second, *Augie 2* did not turn on substantive consolidation and was not reversed by *Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co., Ltd)*, 860 F.2d 515 (2d Cir. 1988).[4] Regardless, the SC Lenders' argument *has nothing to do with substantive consolidation*. The Trustee's assertion that this is a factual issue requiring discovery is therefore also incorrect. This is simply a Rule 8 issue (and, ultimately, a Rule 12(b)(6) issue). The Trustee's Complaint is flawed on its face. The Complaint's inconsistent allegations cancel each other out. And because the inconsistent allegations relate to the "one vital fact" of the Complaint, each of the Trustee's causes of action fails.

**II.     The Trustee's Answering Brief Fails to Point to Allegations in the Complaint that Would Salvage His Deficient Constructive Fraudulent Transfer Claims**

    A.     <u>The Trustee Does Not Allege That Debtor Was Insolvent *At The Time* of the Transfers</u>

In his brief, the Trustee fails to adequately show where in the Complaint he alleges that the Debtor was insolvent at the time the transfers he alleges are fraudulent were made – in 2008, 2010 and at various points between 2012 and 2015. The best the Trustee can do is describe (again) the dire financial condition of the Debtor at the time of its bankruptcy filing in July 2016.

---

[4] The latter case reversed an earlier decision in the same bankruptcy case, *In re Augie/Restivo Baking Co., Ltd.*, 84 B.R. 315 (Bankr. E.D.N.Y. 1988) ("*Augie 1*"). The relevant principle underlying *Augie 2*, that a benefit to one corporation may indirectly benefit an affiliated corporation, remains good law. It is supported by several Second Circuit decisions cited in *Augie 2*, and *Augie 2* has itself been cited for the proposition multiple times. *See, e.g.*, *Leibowitz v. Parkway Bank & Tr. Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 579 (7th Cir. 1998); *Official Comm. of Unsecured Creditors of Vivaro Corp. v. Leucadia Nat'l Corp. (In re Vivaro Corp.)*, 524 B.R. 536, 557 (Bankr. S.D.N.Y. 2015); *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest. Inc.)*, 337 B.R. 495 n.5 (Bankr. S.D.N.Y. 2006); *In re Kaplan Breslaw Ash*, 264 B.R. 309 n.72 (Bankr. S.D.N.Y. 2001). Critically, the fact that the SC Lenders' loans benefited the Debtors is proven in this case by express admissions in the Complaint: "Obtaining sufficient financing was *critical* to the Project's success. EPIL was to provide a key piece of that financing, and EPIL independently arranged for financing with the SC Lenders." Compl. ¶ 3 (emphasis added).

What the Trustee does not do is cite to any specific allegation showing that the Debtor was insolvent when it first conveyed liens to EPIL in 2008, Compl. ¶¶ 18-21, or when those liens were assigned to the SC Lenders in 2010. *Id.* at ¶ 23. The only allegation in the Complaint relied upon by the Trustee with respect to whether he has alleged that the Debtor was insolvent *at the time of the transfers* is his assertion that "from 2008 to 2016," over $500 million of the $1.1 billion the Debtor paid to Essar Global was not spent on the Project. *See* Answering Br. ¶ 50; *see also* Compl. ¶¶ 50, 62, 77, 89 (parroting section 548 in conclusory fashion to allege insolvency). As the Complaint explains, the Project only began in 2008. Compl. ¶ 18. It seems to be the Trustee's position that the Project was insolvent from the outset and that, after eight years of insolvency, the Debtor finally decided to seek bankruptcy protection. It follows that *every* transfer the Debtor *ever* made was potentially voidable. This is unduly vague as a matter of pleading.[5]

In attempting to salvage his constructive fraudulent transfer claim, the Trustee mischaracterizes the cases he purports to rely on as well as his own Complaint. The court in *Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301 (Bankr. D. Del. 2005), did not, as the Trustee contends, accept conclusory allegations of insolvency. In fact, prior to the filing of the amended complaint at issue in that case, the *DVI* court specifically cautioned the plaintiff creditor committee:

> I would require an amendment to the complaint for *more specificity* regarding the actual fraud allegations, certainly, *but also to require an allegation that [REC III] was insolvent, and to ascertain or to allege exactly when [the transferor] was insolvent.*

---

[5] The Trustee's contradictory allegations come into play here, too. The Trustee's position – based on the paragraph of the Complaint cited – is that the Debtor was insolvent during the transfers because its affiliates were taking money out of it. But the Trustee also alleges that the Essar affiliates, including the Debtor, were a single business enterprise. If the money remained in the "enterprise" – even though with a different affiliate – the enterprise itself was not insolvent.

*Id.* at 306 (emphasis added).   The plaintiff complied with the court's instructions, providing

sufficient allegations about the fact and timing of insolvency.   *Id.* at 306-07 ("[P]aragraph 35 of

the Amended Complaint does allege that REC III *was insolvent at the time of each transfer.*")

(emphasis added).

Likewise, the court in *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit,*

*Inc. (In re Jevic Holding Corp.),* No. 08-11006 (BLS), 2011 Bankr. LEXIS 3553 (Bankr. D. Del.

Sep. 15, 2011), in no way accepted conclusory allegations about insolvency, as the Trustee

suggests.   Among other things, the court engaged in a lengthy discussion about the need to

collapse a series of transactions in a leveraged buyout where the transactions were part of "an

overall scheme to defraud the estate and its creditors by depleting all the assets through the use

of a leveraged buyout." *Id.* at *20-25.   The court also affirmed that it "measures a debtor's

solvency 'at the time the debtor transferred value, not at some later or earlier time.'" *Id.* at *31

(*quoting Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.,*

*Inc.),* 92 F.3d 139, 154 (3d Cir. 1996)).   The Complaint there survived because it, unlike the

Trustee's Complaint here, contained factual allegations about the debtor's solvency at the time of

each challenged transfer, including an allegation that the transactions at issue reduced the

debtor's equity "from $46 million to $1 million while its debt rose from $55 million to $101.2

million." *Id.* at *35.

The Trustee's characterization of the Complaint's insolvency allegations is pure rhetoric.

It does not correspond to what the Complaint says.   The assertion that "ESML had no business"

is belied by the Complaint.   ESML may have been mistreated by its affiliates but it does not

follow that ESML "had no business" and, more specifically, that it was insolvent at the time of

any particular challenged transfer.   The Complaint shows that ESML was in the business of

developing the iron ore mine project for years.  FAC ¶ 63 ("Work significantly slowed down on the Project in late 2015 . . . .").  Indeed, the very fact that the project was "half completed" in 2016, after eight years of work per the Complaint, shows that ESML had a business.  Compl. ¶ 2. The Trustee wants the Court to leap to a conclusion about insolvency as far back as 2008 from the allegedly untoward relationship between and among ESML and its affiliates.  No case cited by the Trustee supports such a leap.

### B.    The Complaint Fails to Allege the Absence of Reasonably Equivalent Value

The Trustee's main argument about reasonably equivalent value is that it is a fact intensive issue and thus inherently incapable of resolution on a motion to dismiss.  That is simply wrong.  *See, e.g., Geltzer v. Xavarian High Sch. (In re Akanmu)*, 502 B.R. 124 (Bankr. E.D.N.Y. 2013); *Garcia v. Garcia (In re Garcia)*, 494 B.R. 799 (Bankr. E.D.N.Y. 2013) ; *Goldstein v. BRT, Inc. (In re Universal Mktg.)*, 460 B.R. 828 (Bankr. E.D. Pa. 2011); *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711 (Bankr. D. Del. 2005).

The Trustee makes no effort to oppose the SC Lenders' argument that the value supporting a transfer – here, loans to the affiliated supplier – can be indirect.  *See* Opening Br., p. 25; *see also In re Vivaro*, 524 B.R. at 557-559 ("Plaintiff failed to provide allegations ruling out [the] receipt of any 'indirect benefit,' such as corporate synergy or the enhanced financial health of its corporate parent trickling down the corporate structure.").  Instead, the Trustee argues that, in enforcing their *contract* rights as assignee of the underlying executory *contract* between EPIL and ESML, the SC Lenders stand in the shoes of EPIL and are subject to any *contract* defenses ESML has, *i.e.*, the allegedly material failure of EPIL to perform its *contract* obligations.  The Trustee's assertion is literally true, in so far as it goes, but is also a red herring.  EPIL's purported breach is a contract issue that the Trustee can raise defensively should the assigned contract claim be litigated.  It has nothing to do with the Trustee's affirmative legal attacks based on

theories of fraudulent transfer.   There is no claim in any pleading filed by the Trustee characterizing the initial contract between EPIL and ESML, or the executory promises made therein, as a fraudulent transfer.

### III.    The Complaint Fails to Allege Any Intentional Fraudulent Transfer

The Trustee fails to address the fatal flaws in his intentional fraudulent transfer allegations.   First and foremost, the Trustee continues to elide *who* harbored the fraudulent intent.  In the Complaint, the Trustee uses the passive voice to allege that each of the fraudulent transfers "was made with the actual intent to . . . defraud present or future creditors."  Compl. ¶¶ 64, 91.  In the Answering Brief, he continues to use the passive voice, saying "[i]t may be inferred that when liens on ESML's assets *were given to EPIL* (and assigned to the SC Lenders), and when ESML transferred cash to the SC Lenders to pay EPIL's obligations, it *was done* to ensure that EPIL's obligations to the SC Lenders were paid ahead of other creditors." Answering Br. ¶ 58 (emphasis added).  We parse the grammar because the Trustee also argues (in the same section) that "EPIL . . . exercised substantial control over ESML."  In other words, it is not at all clear that it was ESML, the Debtor, who harbored the fraudulent intent (as the law requires), rather than EPIL.  The alternative interpretation is that ESML and EPIL were one and the same and, as we have argued at length, the Trustee's entire pleading fails if that is the case.

The Trustee asks the Court to infer that the transfers to the SC Lenders were fraudulent in light of the "alleged factual backdrop" of "the diversion of $500 million of ESML's $1.1 billion in payments."  Answering Br. ¶ 58.  But, even where a plaintiff alleges a wide-ranging fraud by a debtor, in order to state a claim for intentional fraudulent transfer, it must "[]adequately allege[] fraud with respect to the transaction that [it seeks] to void."  *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

Further, the Trustee ignores the dispositive significance of the Complaint's admission about the non-fraudulent purposes of the challenged transfers: for the Essar entities to gain tax advantages and secure additional loans.  Compl. ¶ 22.  Here again, the rhetoric of the Trustee's Answering Brief is at odds with the Complaint's admissions.  The Trustee's assertion that transfers were made to favor the SC Lenders over other creditors, Answering Br. ¶ 58, is an admission of failure because, as already demonstrated, such favoritism is not fraud.[6]  *See* Opening Br., p. 28.

Next the Trustee tries to fashion three badges of fraud to show fraudulent intent: (1) that ESML and EPIL were in a close relationship; (2) inadequate consideration; and (3) insolvency.  We have already shown that the Complaint's allegations about insolvency and consideration are insufficient for purposes of the constructive fraud claims.  It must follow that they are inadequately pleaded as badges of fraud for purposes of the intentional fraud claim given the heightened pleading requirements of Rule 9(b).  To establish the "close relationship" badge, the Trustee again trots out the idea that the SC Lenders "stand in the shoes of" insider EPIL.  Here again, the Trustee attempts to graft a contract law defense onto his fraudulent transfer arguments.  Nothing cited by the Trustee supports the idea that the SC Lenders are somehow, derivatively, insiders of the Debtors.[7]

---

[6] The idea that the Debtor or EPIL would favor the SC Lenders, in the absence of any alleged doubt about the arm's length relationship between the SC Lenders and the Debtor or EPIL, is of course absurd on its face and thus implausible.

[7] Similarly, *Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445 (Bankr. D. Del. 2018), is not a helpful comparison for the Trustee.  In *Beskrone*, the trustee specifically alleged that named insiders and managers of the debtor orchestrated various payments to themselves for no consideration whatsoever.  *Id.* at 461.  There were clear allegations of affirmatively deceitful conduct by the defendants in support of the scheme.  *Id.* at 453.  The debtor's insolvency, "from day one," was not even challenged by the defendants.  *Id.* at 453.  Regarding "the meat of the analysis" – "whether the [d]ebtors voluntarily or involuntarily conducted [the transfers] with the intent to defraud an entity to whom they were indebted" – the *Beskrone* complaint named the specific creditor who was the target of the scheme.  *Id.* at 460.  The *Beskrone* trustee identified the challenged payments in detail, showing the dates and amounts, and showed that the payments occurred within two years of the petition date.  *Id.* at 460-461.

IV.     **The Trustee Has Not Refuted that His Claim for Relief Under 11 U.S.C. § 502(d) Is, at Best, Premature and Must Be Dismissed**

The Trustee acknowledges the infirmity of his pleadings with respect to the Sixth Cause of Action in at least two separate instances, essentially requesting that the Court grant some form of provisional, procedural relief to maintain the cause of action notwithstanding the fact that it runs *contra* to long-standing decisional law in this Court.    *See* Answering Br. ¶ 67 ("Notwithstanding this Court's decision in *[Ag Feed USA, LLC], we respectfully submit that the Court should bifurcate this adversary proceeding* . . . If the Court is unwilling [to bifurcate], the Trustee will dismiss this claim without prejudice.") (emphasis added); *id.* at ¶ 68 ("[I]f the Court is not willing to entertain bifurcating . . . , the Trustee will withdraw the 502(d) objection without prejudice.").    Notwithstanding these concessions, the Trustee seeks to salvage his defective pleadings with two unavailing arguments: (i) the *Lids* decision may have been derived from a case with a different procedural posture and (ii) that the Court may simply bifurcate the Sixth Cause of Action. *Id.* at ¶¶ 66-68.   Neither of these arguments is persuasive.

The Trustee asserts, without citation, that "authority is mixed on whether it is necessary to obtain a judgment before objecting to a claim under section 502(d)." *Id.* at ¶ 66.   Although some other courts have refrained from dismissing counts under section 502(d) in certain instances,[8] the Trustee has not identified a single instance where *this* Court has done so. *See id.* at ¶¶ 66-67.   The Trustee has not and cannot refute that *Lids* and its progeny state the law this Court has applied uniformly in multiple instances. *See* Opening Br., pp. 30-31.

---

[8] *See, e.g., Seitz v. Frorer (In re Covenant Partners, L.P.)*, 531 B.R. 84, 100 (Bankr. E.D. Pa. 2015) (refraining from dismissal of disallowance count "for efficiency's sake" and to "consider the 502(d) claim if there is a ruling in the Trustee's favor on the avoidance counts."); *Sher v. JP Morgan Chase Funding Inc. (In re TMST, Inc.)*, 518 B.R. 329, 357-58 (Bankr. D. Md. 2014) ("Because the court has not dismissed all avoidance counts as urged by [d]efendants, the [502(d)] count states a plausible cause of action for recovery.").

Furthermore, the Trustee has not offered any basis for why the Court should depart from applying well-settled law. The Trustee cites to *In re Worldwide Direct, Inc.*, No. 99-108 (MFW), 2000 Bankr. LEXIS 2222 (Bankr. D. Del. Nov. 22, 2000), to intimate that *Lids* may have been decided incorrectly. Answering Br. ¶ 66. The Trustee contends that the genesis of the *Lids* decision is the *Worldwide Direct* decision and that *Worldwide Direct* is procedurally distinguishable because that Court declined to consider a section 502(d) claim brought in the context of an omnibus claim objection rather than as a separate adversary proceeding. *Id. Lids*, however, stands on its own and for a proposition of long-standing in this Court: disallowance of a claim under section 502(d) "requires a judicial determination that the claimant is liable." *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001). *Worldwide Direct,* decided a year earlier, is not cited in *Lids*, and it otherwise is not apparent that *Lids* relies on *Worldwide Direct*. *See generally In re Lids*, 260 B.R. 680. Moreover, the Trustee has not set forth any instance – whether in reliance on *Worldwide Direct* or otherwise – in which this Court departed from the *Lids* holding that section 502(d) claims are premature when the trustee merely commences an adversary proceeding. Answering Br. ¶ 66. Therefore, the Court should reject the Trustee's "creative" attempt to undermine the longstanding and uniform application of *Lids* in favor of an entirely new standard for the disallowance of claims pursuant to section 502(d).

Recognizing that *Lids* remains good and unrebutted law, the Trustee in the alternative attempts to reclaim the Sixth Cause of Action by inviting the Court (in another creative gambit – this time of a procedural nature) to bifurcate it. *Id.* at ¶¶ 67-68. Citing to two non-bankruptcy cases,[9] the Trustee posits that the Court can bifurcate the pleadings to "further convenience [] the

---

[9] The Trustee cites only to *In re Bayside Prison Litig.*, 157 F. App'x 545, 547 (3d Cir. 2005), which is a case in which inmates brought suit against prison guards for alleged improper treatment, and *Depomed Inc. v. Purdue Pharma L.P.*, No. 13-571 (JAP), 2013 U.S. Dist. LEXIS 167630, at *20 (D.N.J. Nov. 26, 2013), which is a patent infringement case. Neither stands for the proposition that bifurcation is a substitute for well-pleaded allegations.

parties, avoid prejudice to the Trustee, and promote judicial economy." *Id.* at ¶ 68.   That

proposed solution to the Trustee's pleading problem, however, runs contrary to precedent in this

Court which requires a judicial determination that a claimant is liable under Chapter 5 of the

Bankruptcy Code as "a prerequisite to a claim under [s]ection 502(d)." *In re Pennysaver USA*

*Publ'g, LLC*, 587 B.R. at 468; *see also* Opening Br., p. 30.   Where there is no judicial

determination that a claimant is liable, a count for 502(d) is not adequately plead. *Stanziale v.*

*Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 866-67

(Bankr. D. Del. 2018); *see also Lids*, 260 B.R. at 684 (until a preference judgment is obtained,

"section 502(d) is not applicable.").[10]   Accordingly, because the Trustee has not adequately

pleaded a count for section 502(d), no viable count exists to bifurcate, and the Sixth Cause of

Action should be dismissed. *See id.*

## V.      The Trustee Cannot Impute EPIL's Alleged Conduct to the SC Lenders for Purposes of Equitable Subordination Under 11 U.S.C. § 510(c)

Once again without citation, the Trustee asserts in conclusory fashion that the SC Lenders

"stand in the shoes of EPIL," for purposes of equitable subordination.   Answering Br. ¶¶ 70, 72.

Based solely on this unsupported contention, the Trustee then attempts to transform the SC

Lenders from traditional, arm's-length lenders into "non-statutory insiders" subject to a lower

threshold showing of inequitable behavior – a status the Trustee claims the SC Lenders inherited

by virtue of EPIL's assignment of its rights to the SC Lenders. *Id.* at ¶¶ 1, 72-76.   However, to

allege a lender is a non-statutory insider requires "facts that [the lender] engaged in behavior

other than that which is considered incidental to a typical debtor-creditor relationship."

---

[10] But even if the Court found that it could bifurcate the Sixth Cause of Action to cure the Trustee's infirm pleading, "bifurcation 'remains the exception rather than the rule.'" *Webxchange Inc. v. Dell Inc.*, No. 08-132-JFF, 2009 U.S. Dist. LEXIS 121165, at *7 (D. Del. Dec. 30, 2009).   "[T]he party moving for bifurcation has the burden of establishing that it is appropriate." *Id.; see also Depomed*, 2013 U.S. Dist. LEXIS 167630, at *20 ("[T]he burden rests on the party seeking bifurcation to show that it is proper.").   The Trustee has not so established in its Answering Brief.

*Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*, No. 15-51069 (CSS), 2017 Bankr. LEXIS 1150, at *27-28 (Bankr. D. Del. Apr. 27, 2017).  The Trustee has failed to plead any allegations whatsoever that the SC Lenders' behavior was abnormal conduct for a lender.  *See* Opening Br., pp. 32-34.

For purposes of this Motion, however, the distinction between insider and non-insider is immaterial because the Trustee also has failed to allege that the SC Lenders engaged in any inequitable act, harmed creditors or conferred an unfair advantage on the SC Lenders.  Answering Br. ¶¶ 72-77.  Instead, the Trustee – without citing any authority – seeks to impute EPIL's alleged inequitable conduct to the SC Lenders.  *Id.* at ¶¶ 73-76.  Case law from this Court repudiates the Trustee's argument.    In *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, the Court rejected a committee's argument that one entity's inequitable behavior could be imputed to another for purposes of establishing an equitable subordination claim.    590 B.R. 211, 300 (Bankr. D. Del. 2018).  To justify the extraordinary remedy of equitable subordination, the Court reasoned that "courts commonly hold that equitable subordination must be based on the claimant's own acts."  *Id. (quoting Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse (In re Champion Enters., Inc.)*, No. 10-50514 (KG), 2010 Bankr. LEXIS 2720, at *10 (Bankr. D. Del. Sept. 1, 2010)).  The *HH Liquidation* court found that the only allegations of inequitable conduct were not alleged against the particular defendant and therefore determined that the committee could not maintain a claim for equitable subordination as to that defendant.  *Id.* at 300-01.

Here, as in *In re HH Liquidation, LLC*, the Trustee has not pleaded a single fact to support a finding that the SC Lenders engaged in inequitable conduct.  *See* Opening Br., pp. 32-

35.    The Trustee plainly admits that *every* allegation asserted against the SC Lenders is predicated entirely on EPIL's (and not the SC Lenders') alleged inequitable behavior.  *See* Answering Br. ¶¶ 72-76.  Similarly, the Trustee admits that every allegation relating to purported injury to creditors is predicated only on the effect of EPIL's (and not the SC Lenders') alleged inequitable behavior on the Debtors' creditors. *See id.* at ¶ 77.  Therefore, the Trustee has not set forth any fact to support the Seventh Cause of Action.

Because "[t]he party seeking to subordinate a claim has the initial burden of coming forward with material evidence to overcome the *prima facie* validity accorded to proofs of claim," *United States v. State St. Bank & Trust Co.*, 520 B.R. 29, 80 (Bankr. D. Del. 2014), the Trustee cannot set forth facts to support a single factor required to subordinate the SC Lenders' claims, the Seventh Cause of Action must be dismissed.[11]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, with prejudice, in its entirety.

**[Remainder of Page Intentionally Left Blank]**

---

[11] The Defendants agree with the Trustee that his Fifth Cause of Action for declaratory relief lives and dies with the Complaint's substantive claims.  Because the substantive claims should be dismissed, the claim for declaratory relief should be dismissed as well.

Dated: April 12, 2019
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:    (302) 467-4450
Email: landis@lrclaw.com
        rath@lrclaw.com
        cree@lrclaw.com

– and –

**BAILEY DUQUETTE P.C.**
James D. Bailey (*pro hac vice*)
100 Broadway, 10th Floor
New York, NY 10005
Telephone: (212) 658-1946
Facsimile: (866) 233-5869
Email: james@baileyduquette.com

*Attorneys for Defendants Central Bank of India and Export Import Bank of India*