# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>ESSAR STEEL MINNESOTA LLC and<br>ESML HOLDINGS INC.<br><br>Debtors. | Chapter 11<br>Case No. 16-11626 (BLS)<br>Jointly Administered |
| BRADLEY E. SCHER, solely in his capacity as Litigation Trustee for Mesabi SC Litigation Trust,<br><br>   Plaintiff,<br><br>v.<br><br>CENTRAL BANK OF INDIA, AND EXPORT IMPORT BANK OF INDIA.<br><br>   Defendants. | Adv. Proc. No. 18-50555<br><br>Re: AP Docket No. 10 |

Laura Davis Jones, Esq.
Timothy P. Cairns, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801

Craig Averch, Esq.
White and Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433

*Attorneys for Bradley E. Scher, SC Mesabi Litigation Trustee*

James D. Bailey, Esq.
Bailey Duquette P.C.
100 Broadway, 10th Floor
New York, NY 10005

Adam Landis, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801

*Attorneys for Central Bank of India and Export Import Bank of India*

# OPINION[1]

Before the Court is a Motion to Dismiss (the "Motion") filed by Defendants Central Bank of India and Export Import Bank of India (collectively, the "Lenders"). The Plaintiff in this matter is the Litigation Trustee for the Mesabi Secured Creditors Litigation Trust (the "Trustee"). The Trustee seeks recovery of liens and cash transfers that the Debtor and its affiliates conferred on the Lenders in the six years preceding the petition date. For reasons that follow, the Court will grant the Motion without prejudice.

## I. BACKGROUND[2]

Nearly a decade ago, Debtor Essar Steel Minnesota Limited ("ESML") set out to build a state-of-the-art iron ore mine and pellet processing plant in Nashwauk, Minnesota (the "Plant"). At the time, ESML was a subsidiary of Essar Global Fund Limited ("Essar Global"), which controlled a vast network of entities that spanned the globe and a spectrum of industries. At the time, Essar Projects India Limited ("EPIL") was an affiliate of Essar Global.

To support construction of the Plant, in 2010 ESML entered into a contract with EPIL (the "Supply and Engineering Contract"). That agreement provided that EPIL would procure offshore goods and provide engineering services in exchange for

---

[1] Pursuant to Fed. R. Civ. P. 52 (made applicable through Fed. R. Bankr. P. 7052), the Court does not make findings of fact or conclusions of law for purposes of a decision on a 12(b)(6) motion.

[2] For purposes of a Rule 12(b)(6) Motion, the Court considers and assumes the truth of all the well-pleaded factual allegations contained in the Complaint and the documents incorporated therein.

$215 million. Subsequently, ESML entered various other agreements that granted liens on its assets for the benefit of its lenders, including EPIL.[3]

The Supply and Engineering Contract required EPIL to procure financing to support the construction of the Plant. To do so, it required (1) ESML to post an advance for 15% of the total project cost and (2) EPIL to open lines of credit with lenders to cover the remaining 85%. Once EPIL procured equipment, it would invoice the cost to ESML. The lenders would then pay EPIL 85% of the invoice. The remaining 15% would be credited against the advance that was posted by ESML. ESML was then obligated to repay the 85% principal to EPIL and to repay the interest to the lenders.[4]

In August 2010, the Lenders agreed to help finance the project and lent EPIL about Rs. 600 crore ("Credit Facility").[5] Sometime thereafter, EPIL executed an Assignment Deed that conferred to the Lenders all of EPIL's interests in "contracts, rights, securities and insurances of [EPIL] with respect to the [Supply and Engineering Contract]."[6] In the following six years, ESML made principal and interest payments on the Credit Facility directly to the Lenders and through EPIL.

Based on the Trustee's representations, the construction of the Plant turned out to be a disaster. It remains unfinished and unusable for its intended purpose.

---

[3] AP Docket No. 1 at 8.

[4] AP Docket No. 1 at 10.

[5] About $86 million in today's dollars. The amount of the loan was later increased to Rs. 900 crore (about $130 million).

[6] AP Docket No 1 at 8.

Among the countless breaches alleged to have been committed by Essar Global's subsidiaries and affiliates, EPIL failed to deliver essential equipment and materials. The engineering work was also defective because, among other problems, it failed to account for the weight of snow on the roof of the Plant in northern Minnesota. To add to the problems, the currency exchange rate between dollars and rupees deteriorated between 2010 and 2016, further weakening the rupee and therefore restricting ESML's spending power. By 2014, it was clear that there was a financing shortfall of over $30 million.

On July 8, 2016, the Debtors filed their Chapter 11 petitions (the "Petition Date"). The Lenders asserted secured claims in excess of $150 million. The Court subsequently confirmed a Plan that established the SC Mesabi Litigation Trust and recognized the Trustee as its representative. In addition to the instant proceeding, the Trustee has also filed an adversary proceeding against Essar Global and several of its affiliates, including EPIL.[7] Significantly, the Trustee's Complaint in this adversary fully incorporated the First Amended Complaint (hereinafter referred to as the "Essar Global Complaint")[8] that was filed in the adversary proceeding against Essar Global and EPIL.[9]

In this adversary, the Trustee seeks avoidance and recovery of liens and funds that were transferred to the Lenders, a declaratory judgement that the liens are void,

---

[7] Adv. Case No. 17-50001.

[8] Adv. Case No. 17-50001, Docket No. 60.

[9] AP Docket No. 1 at 16.

4

and disallowance or equitable subordination of the Lenders' claims. As noted, the Lenders filed this Motion to Dismiss for failure to state a claim. This matter is fully briefed and is ripe for disposition.

## II. THE PARTIES' POSITIONS

The crux of the dispute is whether the Complaint alleges EPIL and ESML were a single business enterprise. The Lenders argue that the Trustee alleges ESML and EPIL were two prongs of a single Essar Global entity. As such, there is no claim for fraudulent conveyance because the Lenders conferred the loans in exchange for the payments and the liens. In other words, ESML received reasonably equivalent value. The Lenders therefore posit that the Trustee has pleaded itself out of its avoidance claims.

The Trustee replies that the Complaint adequately alleges corporate separateness between EPIL and ESML. While the Essar Global Complaint may assert that EPIL was an alter ego of Essar Global, that does not necessarily mean they were all part of the same entity. Because EPIL failed to perform under the Supply and Engineering Contract, ESML did not receive reasonably equivalent value. The Lenders, as assignees, stand in the shoes of EPIL. The Trustee therefore argues that because EPIL's liens are avoidable, the Lenders' liens must also be avoidable.

## III. JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The

Court has the power to enter an order on a motion to dismiss even if the matter is non-core or the Court lacks authority to enter a final order.[10]

IV. STANDARD

The Defendants filed their Motion under Fed. R. Civ. P. 12(b)(6) (made applicable through Fed. R. Bankr. P. 7012) for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[11] When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff."[12]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [13] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief require more than labels and conclusions, and a formulaic

---

[10] *See, e.g., Boyd v. King Par, LLC*, No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions."). *See also In re Amcad Holdings, LLC*, 579 B.R. 33, 37 (Bankr. D. Del. 2017).

[11] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp. 2d 404, 407 (D.Del 2007).

[12] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

6

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[14]

V. ANALYSIS

To survive a Rule 12(b)(6) Motion, the complaint must "state a claim that is plausible on its face." *Id.* at 570. A plaintiff may plead inconsistent facts in the alternative and still survive 12(b)(6),[15] but "contradictory allegations sometimes are a reason to support dismissal."[16]

The threshold question the Court must answer is a narrow one: does the Complaint contain facts that suggest EPIL and ESML operated as separate entities? If it did, then the Trustee has staked out claims for avoiding fraudulent conveyances or for equitable subordination, and the Complaint will survive. If not, it must be dismissed.

The Complaint contains a number of allegations that suggest the Essar Global family operated as a single unit. Notably, it alleges "Essar Global and its affiliates, including [EPIL], orchestrated and directed every material aspect of ESML's business"[17] and "[f]rom its inception, ESML was completely reliant upon its

---

[14] *Twombly*, 550 U.S. at 555 (internal citations omitted).

[15] Fed. R. Civ. P. 8(d)(3).

[16] *JCF AFFM Debt Holdings, L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins. Holdings, Inc.)*, 565 B.R. 566, 586 n.95 (Bankr. D. Del. 2017) (citing *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31 (9th Cir. 2007) (affirming a District's Court's dismissal under 12(b)(6) for contradictory allegations)).

[17] Complaint at 2.

7

affiliates."[18] Those statements, while suggesting the entities likely did operate as a single unit, do not necessarily establish that EPIL and ESML were one business enterprise.

But the inquiry does not end there. As noted, the Trustee fully incorporated the Essar Global Complaint. Among many claims for relief in that complaint, the Trustee asserts Essar Global was the alter ego of its various affiliates. The Trustee also alleges the "corporate structure owned, directed, controlled by Essar Global was merely a façade masking a single enterprise acting in concert for the benefit of Essar Global."[19] If that was not clear enough, the Trustee goes on to insist that "[r]ecognizing any corporate separateness as between Essar Affiliates would promote injustice, inequality, and fraud, and injury Plaintiff and its creditors."[20]

In light of the statements above from the Essar Global Complaint, the Court concludes that the Complaint alleges that EPIL and ESML functionally were a single enterprise. Therefore, there could be no fraudulent transfer claims.[21] The Lenders made the loan to the EPIL-ESML enterprise and received the liens and cash transfers in return. The Complaint and the Essar Global Complaint contain several conclusory allegations that ESML alone never received reasonably equivalent value. But that is

---

[18] Complaint at 5.

[19] Essar Global Complaint at 75.

[20] Essar Global Complaint at 76.

[21] Without the fraudulent transfer claims, the related Fifth Cause of Action (for a declaratory judgment that determines the nature, extent, priority and validity of the liens) and Sixth Cause of Action (seeking disallowance or reduction of Claim No. 144 and Claim No. 154 under 11 U.S.C. §§ 502(b) and (d)) also are not plausible.

only half the picture. There are no allegations in either complaint that EPIL—as opposed to ESML—received less than reasonably equivalent value.

As noted, inconsistent statements do not automatically doom a complaint. But this inconsistency is a significant one. The precise relationship between ESML and EPIL will likely be a focal point of the Lenders' response. At least some of the fraudulent transfers alleged by the Trustee were cash payments directly from ESML to the Lenders to satisfy EPIL's obligations. At a minimum, that suggests the corporate barriers between the two entities were porous, if not illusory. The Trustee's inconsistent remarks on corporate separateness in the Complaint and the Essar Global Complaint obfuscate a key question in this avoidance action—namely, what precisely was the relationship between EPIL and ESML. As a result, the Court concludes that the Trustee has failed allege that ESML received less than reasonably equivalent value.

Further, the Complaint fails to adequately allege grounds to support a claim for equitable subordination. The Complaint does not contain any allegations of misconduct by the Lenders. The gist of the equitable subordination claim is that the Lenders stand in the shoes of EPIL, and that EPIL's misconduct can be imputed to the Lenders. However, one entity's alleged inequitable conduct may not be imputed

to another.[22] "[C]ourts commonly hold that equitable subordination must be based on the claimant's own acts."[23]

V. CONCLUSION

For the reasons stated above, the Court will GRANT the Defendants' Motion to Dismiss with leave to replead. The parties are requested to confer and provide a written form of order consistent with the above to the Court within 14 days of the date hereof.

Dated: October 15, 2020
       Wilmington, Delaware

                              Brendan Linehan Shannon
                              United States Bankruptcy Judge

---

[22] *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 300 (Bankr. D. Del. 2018) (citing *Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 369 (Bankr. S.D.N.Y. 2002) (holding that the committee's allegations regarding the control exercised by a corporate parent that advised the debtor on corporate acquisitions over the decision by a corporate affiliate to finance such acquisitions were insufficient to hold the corporate affiliate liable for the parent's alleged misconduct, and thus to equitably subordinate affiliate's claim on that basis)).

[23] *The Official Comm. of Unsecured Creditors of Champion Enter., Inc. v. Credit Suisse (In re Champion Enter., Inc.)*, (Adv. No. 10-50514 (KG)), 2010 WL 3522132, *10 (Bankr. D. Del. Sept. 1, 2010) (citing *U.S. v. Noland*, 517 U.S. 535, 538, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (observing that the doctrine of equitable subordination is "generally triggered by a showing that the creditor had engaged in 'some type of inequitable conduct.'"); *Schubert v. Lucent Techs. Inc. (In re Winstar Commc'n, Inc.)*, 348 B.R. 234, 283 (Bankr. D. Del. 2005) (aff'd in part, modified in part 554 F.3d 382 (3d Cir. 2009)) (finding that for equitable subordination "a claimant must have engaged in some type of inequitable conduct."); *Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co., Inc.)*, 420 F.3d 53, 59-65 (1st Cir. 2005) (noting that "equitable subordination demands that the claimant be found to have engaged in inequitable conduct and rejecting "no-fault" equitable subordination for classes of claimants).